659 A.2d 549

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Christine JACKSON, Appellant.**

Supreme Court of Pennsylvania,
Eastern District.

Argued Dec. 6, 1994.

Decided May 25, 1995.

Reargument Denied July 12, 1995.

Larry Feinstein, for C. Jackson.

Catherine Marshall, Ronald Eisenberg, Anthony V. Pomeranz, for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## ORDER

PER CURIAM.

The Court being evenly divided, the Order of the Superior Court is affirmed.

PAPADAKOS, J., did not participate in the decision of this case.

NIX, C.J., files an Opinion in Support of Affirmance.

CASTILLE, J., files an Opinion in Support of Affirmance in which MONTEMURO, J., joins.*

ZAPPALA, J., files an Opinion in Support of Reversal in which FLAHERTY and CAPPY, JJ., join.

## OPINION IN SUPPORT OF AFFIRMANCE

NIX, Chief Justice.

In its attempt to vacate Appellant's conviction, the opinion in support of reversal distinguishes past precedent involving constructive possession from the instant case based on the relationship and sleeping arrangements between Appellant and her brother. Because I do not believe these factors are dispositive of the question of whether Appellant exercised dominion and control over the contraband seized in her apartment, I respectfully dissent.

The opinion in support of reversal correctly states that an appellate court can not substitute its judgment for that of the finder of fact, and that upon review, the evidence must be viewed in the light most favorable to the Commonwealth as verdict winner. The trial court, as finder of fact, made the following relevant findings:

[Appellant] admitted that she was the lessee of the apartment ... [.]

. . . .

In the rear bedroom the police found an ice chest *belonging to [Appellant]* which contained forty-one (41) clear plastic bags, each containing approximately forty (40) clear plastic vials filled with crack cocaine, and fourteen (14) clear bags each containing approximately twenty (20) plastic packets filled with cocaine.

. . . .

* Mr. Justice Montemuro is sitting by designation.

A heat sealer, scale, .38 calibre handgun and a 9mm handgun (both of which were loaded) were also found in the rear bedroom.

Drug paraphernalia including two scales, and a heat sealer were found in a kitchen cabinet, and a duffel bag containing "thousands of empty vials and packets" and a loaded shot gun [sic] were found in the closet next to [Appellant]'s bedroom.

The rear bedroom, kitchen cabinets and the closet containing the duffel bag were not locked[.]

[Appellant] admitted to using the kitchen cabinets and the closet[.]

[Appellant] had access to all areas of the apartment including the rear bedroom.

. . . .

[Appellant] was a willing participant in drug dealing occurring in her apartment.

*Commonwealth v. Jackson,* No. 8901–0957, slip op. at 2–4 (C.P. Philadelphia County January 22, 1993) (emphasis added; citations omitted). Based upon these findings, I believe there is sufficient evidence on the record to uphold Appellant's conviction.

"An intent to maintain a conscious dominion may be inferred from the totality of the circumstances. Further, circumstantial evidence may be used to establish a defendant's possession of drugs or contraband." *Commonwealth v. Macolino,* 503 Pa. 201, 206, 469 A.2d 132, 134–35 (1983) (citations omitted). In my view, the facts of this case fall squarely within the holding of *Commonwealth v. Mudrick,* 510 Pa. 305, 507 A.2d 1212 (1986), where this Court held that "even absent a marital relationship[,] constructive possession may be found in either or both actors if contraband is found in an area of joint control and equal access." *Id.* at 309, 507 A.2d at 1214. It is clear from the record that the equipment used in the processing and distribution of the cocaine was found in areas of the apartment to which both Appellant and her brother had equal access; i.e. the kitchen cabinets and hallway closet.

Moreover, the trial court found that Appellant had access to the rear bedroom and that the ice chest in which the cocaine was found belonged to Appellant.

Based upon the findings of the trial court and the totality of the circumstances, I believe there is sufficient evidence to support Appellant's conviction for possession and possession with intent to deliver. I would, therefore, affirm the Order of the Superior Court.

## OPINION IN SUPPORT OF AFFIRMANCE

CASTILLE, Justice.

Following a bench trial, appellant was convicted of possession of a controlled substance [1] and possession of a controlled substance with intent to deliver.[2] Post-trial motions were denied and appellant was sentenced to the mandatory minimum sentence of four to eight years imprisonment. The Superior Court affirmed appellant's judgment of sentence. This Court granted allocatur to examine whether the evidence was sufficient to support appellant's convictions.

Appellant's sole claim before this Court is that the evidence is insufficient to sustain her convictions. It is well established that when reviewing a sufficiency of the evidence claim, an appellate court must determine whether the evidence was sufficient to enable the factfinder to find every element of the crimes charged beyond a reasonable doubt, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the verdict winner. *Commonwealth v. Thomas*, 527 Pa. 511, 594 A.2d 300 (1991). When viewed properly under this standard, it is clear that there was sufficient evidence at trial to support appellant's convictions for possession of a controlled substance and possession of a controlled substance with the intent to deliver.

Possession of a controlled substance can be proven by showing that a defendant actually possessed drugs through direct evidence, such as finding the controlled substance on

1.  35 P.S. § 780–113(a)(16).
2.  35 P.A. § 780–113(a)(30).

the defendant's person, or it can be proven by showing that the defendant constructively possessed a controlled substance. *Commonwealth v. Macolino*, 503 Pa. 201, 469 A.2d 132 (1983) (possession of controlled substance can be proven by showing actual possession or by showing that defendant constructively possessed the controlled substance). Since the evidence showed that the controlled substance was located in appellant's brother's bedroom in the apartment leased by the appellant, and not on her person, the evidence, taken in the light most favorable to the Commonwealth and affording all reasonable inferences therefrom, must demonstrate beyond a reasonable doubt that appellant had constructive possession of the illegal substances.

In order to prove constructive possession, the Commonwealth must have demonstrated that appellant had the "ability to exercise a conscious dominion over the illegal substance." *Id.* Constructive possession is: "the power to control the contraband," and "the intent to exercise that control." *Id.*, at 206, 469 A.2d at 134 (1983). These elements may be inferred from the totality of the circumstances, *id*, and may be established circumstantially. *Id.* at 205, 469 A.2d at 134. "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." *Commonwealth v. Mudrick*, 510 Pa. 305, 307, 507 A.2d 1212, 1213 (1986). Furthermore, constructive possession may be proven where the item in issue is in an area of joint control and equal access. *Id.* at 307, 507 A.2d at 1213 (1986) (jury could find constructive possession where contraband was found in an area where defendant and his paramour had joint control and equal access). "Possession of the illegal substance need not be exclusive; two or more can possess the same drug at the same time." *Commonwealth v. Macolino*, 503 Pa. 201, 208, 469 A.2d 132, 135 (1983).

Viewing the evidence presented at trial and taken in the light most favorable to the Commonwealth, the record establishes that police officers executed a search warrant at an apartment leased to appellant where she resided with her four-year-old son and her brother. Upon execution of the

warrant at appellant's apartment, the police found inside appellant's kitchen cabinets two scales (which are commonly used in drug trafficking for weighing controlled substances) and a heat sealing device (which is commonly used in drug trafficking for sealing packets used to sell cocaine). Police testified that the scales and the heat sealing device were immediately visible when appellant's cabinets were opened. Appellant herself admitted she used the cabinets in which the drug processing paraphernalia was found.[3]

In an unlocked closet located next to appellant's bedroom, police officers found a loaded, pump-action, sawed-off shotgun leaning against the wall and a duffle bag which contained *thousands* of empty vials and packets. (N.T., 7/2/92, pp. 9–14, 24). Appellant admitted using this closet.[4]

In appellant's brother's bedroom, police officers found a cooler containing 1,683 small plastic vials containing a total of 137.9 grams of crack cocaine, divided into bundles of forty.[5] Also in the cooler were 297 packets containing a total of 118 grams of cocaine powder, packed in bundles of twenty. The police also found a loaded 9 millimeter firearm, another heat sealing device, another scale all in plain view on a shelf in appellant's bedroom, the door to which was unlocked and a .38 caliber handgun under the bed.

The trial judge, sitting as the factfinder, examining all the evidence in its totality, could reasonably conclude that appellant had knowledge of the cocaine in her brother's bedroom along with the items found in the kitchen cabinets and hall closet which are commonly used in cocaine packaging and trafficking, that appellant exercised a conscious dominion and control over the contraband, that the contraband was discover-

3. Appellant, however, denies ever seeing the paraphernalia which the police testified were in plain view in her kitchen.

4. Appellant denied ever seeing the shotgun in the closet or of knowing the contents of the duffle bag.

5. Appellant acknowledged at trial that the cooler was hers but testified that she discarded it prior to the execution of the warrant since she no longer needed it because her parents purchased her a refrigerator. Appellant explained that her brother must have taken it from the trash to use it.

ed in areas of joint control and equal access, and that the reasonable inferences established circumstantially that appellant intended to possess the contraband. For this Court to hold that the evidence introduced into this case and the reasonable inferences drawn from the evidence are not sufficient to prove the elements of the crimes charged beyond a reasonable doubt, encourages those living in a joint residence to simply turn a "blind eye" and practice a studied ignorance to the obvious presence of drug dealing in the joint residence. One should only ignore the obvious to one's peril.

In *Commonwealth v. Macolino*, 503 Pa. 201, 469 A.2d 132 (1983), this Court held that it was reasonable for the factfinder to conclude that the accused husband knew of the cocaine hidden in the closet he shared with his wife, that he had the power to control it and that he had the intent to control it, despite the husband's claim that he had no knowledge of the cocaine. In *Commonwealth v. Carroll*, 510 Pa. 299, 507 A.2d 819 (1986), this Court found that the accused husband constructively possessed heroin discovered in his wife's jeans which were in a laundry bag lying next to a bed in their motel room. This Court held that their joint access and control over the motel room where the heroin was found established constructive possession. In *Commonwealth v. Mudrick*, 510 Pa. 305, 507 A.2d 1212 (1986), this Court affirmed that the defendant was in constructive possession of drugs in the home he shared with his girlfriend because the couple shared access to and control of the living room coffee table where contraband was found. Appellant fails to adequately explain how this case differs from the above cases or why they should not be followed in this instance.[6]

As this Court noted in *Macolino*, the concept of constructive possession is necessary to prevent persons from having "a

6. The opinion in support of reversal attempts to distinguish these cases from the instant cases based upon the marital relationship(s) in the cited cases. However, in *Commonwealth v. Mudrick*, this Court expressly rejected the requirement that there must be a marital relationship to prove constructive possession. 510 Pa. at 307, 507 A.2d at 1213. Here, we have a sibling relationship and drug contraband and paraphernalia throughout *appellant's* apartment. The evidence in this case sufficiently demonstrates constructive possession.

privileged sanctuary for the storage of illegal contraband." 503 Pa. 201, 210, 469 A.2d 132, 136 (1983). This Court further noted that without the concept of constructive possession, a party, spouse, roommate, or partner would be "impervious to prosecution" simply "by storing contraband in a place controlled by more than one party." 503 Pa. at 210, 469 A.2d at 136.

Appellant here clearly has joint possession of and dominion over drug paraphernalia and an illegal weapon in areas which she readily admitted she used. In the second bedroom of her apartment, which was not locked and was used by her brother, there was contraband in plain view on the shelves. Her conviction, given this evidence, should stand.

The opinion in support of reversal fails to give the Commonwealth's evidence its proper weight. Instead, it concludes that the finder of fact should have credited appellant's claim of ignorance as to the drugs in her home over the Commonwealth's proof. Such an argument is not relevant to a sufficiency of evidence review. Rather, it addressees the weight accorded the evidence by the finder of fact. However, this Court's duties is not to reweigh the evidence and substitute its judgment for that of the factfinder. *Commonwealth v. Pierce*, 537 Pa. 514, 530–32, 645 A.2d 189, 198 (1994) (to substitute our judgment for that of the finder of fact requires a credibility assessment which is clearly not our function) (citation omitted); *Commonwealth v. Pronkoskie*, 498 Pa. 245, 445 A.2d 1203 (1982) (an appellate court is barred from substituting its judgment for that of the finder of fact); *Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152 (1986) (an appellate court may substitute its judgment for that of the finder of fact only where the verdict is so contrary to the evidence as to shock one's sense of justice). The verdict here is not so contrary to the evidence as to shock one's sense of justice.

Accordingly, I would affirm the order of the Superior Court affirming appellant's judgments of sentence.

MONTEMURO, J., joins this opinion in support of affirmance.

## *OPINION IN SUPPORT OF REVERSAL*

ZAPPALA, Justice.

Appellant, Christine Jackson, was found guilty in a non-jury trial of possession of a controlled substance [1] and possession of a controlled substance with intent to deliver.[2] Post-trial motions were denied and Appellant was sentenced to the mandatory minimum sentence of four to eight years imprisonment. Superior Court affirmed.

Appellant's sole contention is that the evidence presented by the Commonwealth was insufficient to establish beyond a reasonable doubt that Appellant was illegally in possession of narcotic drugs. We agree and would vacate the judgment of sentence.

At 10:15 p.m. on December 16, 1988, Philadelphia police officers executed a search warrant for Appellant's apartment at 5647 Chester Avenue in Philadelphia. Appellant shared the apartment with her four-year old son and her brother, Richard John Jackson, known as John. When the police executed the warrant, only Appellant and her son were present.

In the rear bedroom of the apartment, which was used by Appellant's brother, the police found an ice chest which contained forty-one clear plastic bags, each containing approximately forty clear plastic vials filled with crack cocaine, and fourteen clear bags each containing approximately twenty plastic packets filled with cocaine. The total number of vials was approximately 1,683 and the total number of packets was approximately 297. The total weight of cocaine/crack found in the apartment was in excess of 250 grams. A heat-sealer, scale, .38 calibre handgun and a 9 millimeter handgun (both of which were loaded) were also found in the rear bedroom.

Inside the apartment's kitchen cabinets, the police found two scales and another heat-sealer. In an unlocked closet in the hallway outside Appellant's bedroom, the police found a

1. Act of April 14, 1972, P.L. 233, No. 64, § 13, as amended, 35 P.S. § 780–113(a)(16) (Supp.1994).

2. Act of April 14, 1972, P.L. 233, No. 64, § 13, as amended, 35 P.S. § 780–113(a)(30)(Supp.1994).

duffel bag containing thousands of empty vials and packets and a loaded pump-action sawed-off shotgun. The police found proof of residency for the apartment in the form of a telephone bill, an electric bill and a lease, all of which named the appellant. No drugs, paraphernalia or weapons were found in the appellant's bedroom or on the person of the appellant.

When reviewing for sufficiency of the evidence, an appellate court may not substitute its judgment for the fact finder's. *Commonwealth v. Bachert,* 499 Pa. 398, 453 A.2d 931 (1982), *cert. denied,* 460 U.S. 1043, 103 S.Ct. 1440, 75 L.Ed.2d 797 (1983). It must view the evidence in the light most favorable to the verdict winner, here the Commonwealth, and draw all reasonable inferences that the evidence permits in favor of the verdict winner. *Commonwealth v. Lovette,* 498 Pa. 665, 450 A.2d 975 (1982), *cert. denied,* 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1025 (1983). Considered in that light, the evidence and the reasonable inferences arising from it fail to establish beyond a reasonable doubt that Appellant was guilty of the illegal possession of narcotic drugs.

The illegal possession of narcotic drugs is a crime which "by its very nature is unique to the individual. By definition, the possessor is the only person who could commit this crime. Guilt by association ... is unacceptable." *Commonwealth v. Reece,* 437 Pa. 422, 427, 263 A.2d 463, 466 (1970). In the instant case, no narcotic drugs were found on the person of the appellant. Since the controlled substances were found in Appellant's brother's bedroom, and not on her person, the Commonwealth relied on the doctrine of constructive possession. " 'The purpose of the constructive possession doctrine is to expand the scope of possession statutes to encompass those cases where actual possession at the time of arrest cannot be shown but where the inference that there has been actual possession is strong.' " *Commonwealth v. Carroll,* 510 Pa. 299, 302, 507 A.2d 819, 820 (1986), quoting Whitebread and Stevens, *To Have and To Have Not,* 58 U.Va.L.Rev. 751, 755 (1972).

In *Commonwealth v. Mudrick,* 510 Pa. 305, 507 A.2d 1212 (1986), this Court stated:

> Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." *Commonwealth v. Davis,* 444 Pa. 11, 15, 280 A.2d 119, 121 (1971). We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." *Commonwealth v. Macolino,* 503 Pa. 201, 206, 469 A.2d 132, 134 (1983). Though these tests may be helpful in the abstract, application to actual factual situations, particularly when multiple actors are involved, has proven difficult for our lower courts in cases involving controlled substances located on premises in joint possession but not on the actual person of any of the parties entitled to occupy those premises.
>
> To aid application, we have held that constructive possession may be established by the totality of the circumstances. *Commonwealth v. Fortune,* 456 Pa. 365, 318 A.2d 327 (1974).

510 Pa. at 308, 507 A.2d at 1213.

At trial, Appellant testified that she did not know of the drug distribution activities taking place in her home; that she had previously discarded the ice chest in which the drugs were found and did not know that her brother was using it to store drugs; that she had no access to the rear bedroom because her brother always kept it locked; and that although she used both the hallway closet and the kitchen cabinets, she did not know of the paraphernalia stored therein.

The trial court found Appellant's testimony incredible and concluded that Appellant had joint control over and access to the entire apartment, including the rear bedroom, and that the large amount of drugs found and the presence of paraphernalia throughout the apartment demonstrated her knowledge of, and participation in, a drug operation.

In this appeal, the Commonwealth, relying on *Macolino, Carroll* and *Mudrick,* argues that proof of constructive possession, and in particular, Appellant's intent to control the contra-

band, was established by the totality of the circumstances. We find those cases distinguishable.

In *Macolino*, this Court was confronted with the issue of constructive possession of contraband seized in an area jointly controlled by a husband and wife. We found the evidence sufficient to establish constructive possession, holding that a husband and wife can have constructive possession of drugs and paraphernalia which are seized from an area to which they had equal access, the marital bedroom.

The material facts in *Carroll* matched those in *Macolino*. In *Carroll*, contraband and other items relating to drug traffic and use were found hidden in the sleeping area of a residence (a motel room) jointly controlled by a husband and wife. We determined that *Carroll* was controlled by *Macolino* and again found the evidence sufficient to establish constructive possession.

In *Mudrick*, contraband and paraphernalia were found in the bedroom of the residence of an unmarried couple. The facts established that the couple had joint control and equal access to the shared bedroom. We held that, "even absent a marital relationship constructive possession may be found in either or both actors if contraband is found in an area of joint control and equal access. The marital relationship *per se* was not critical to the *Macolino* analysis; shared access to and control of the area where the contraband was found was critical." *Mudrick*, 510 Pa. at 309, 507 A.2d at 1214.

The contraband in the instant case, however, was not found in a portion of the residence occupied jointly by those in residence. The drugs themselves were not found in Appellant's bedroom; nor was there evidence to establish that Appellant slept in or otherwise shared access to the bedroom in which the contraband was found. The uncontradicted testimony was that the bedroom in which the drugs were found was occupied by Appellant's brother. This case involves neither a husband and wife, nor an unmarried couple, jointly possessing drugs in the bedroom/sleeping area to which they

both had equal access, but instead a brother and sister sharing a residence and maintaining separate bedrooms.

In *Macolino,* we observed that a bedroom is a more private place with limited access and is, therefore, usually subject to the exclusive control of its occupant. 503 Pa. at 207, 469 A.2d at 135. Under that reasoning, unlike *Macolino, Carroll* and *Mudrick,*
the bedroom here cannot be assumed to be under the joint control of both parties, but instead, under the control of its sole occupant, Appellant's brother, John. The inference of possession based on joint control of the bedroom/sleeping area by both parties loses its significance when the cohabitants of a residence maintain separate bedrooms and the contraband is found in the bedroom of one and not the other.

The trial court noted that:

[I]t is inconceivable that the defendant did not participate in *or* have knowledge of the drug distribution activities occurring in her apartment. *Even if the defendant did not actively participate* in the drug operations, she cannot, like an ostrich, bury her head in the sand and refuse to notice what is taking place around her.

(Slip Op. at 6) (emphasis added).

The above quoted language explicitly evinces the trial court's uncertainty as to whether Appellant was actually a participant in the drug distribution activities or merely had knowledge of such. Without a showing of intent, knowledge and residence alone are insufficient to support a finding of the exercise of dominion and control.

The Commonwealth introduced no physical evidence to establish that Appellant had any connection to the contraband or paraphernalia. The affidavit in support of the search warrant specifically stated that the informant knew there were drugs in the apartment because he had worked for "a black male named John and one named Len." The informant made no mention of Appellant.[3] Although the trial court disbelieved

3. Prior to trial, Appellant filed a motion to produce the confidential informant in an attempt to elicit testimony to establish her lack of

Appellant's testimony that she had no knowledge of the drugs and that she did not know the ice chest she had discarded was being used to store drugs, the Commonwealth was not relieved of its burden of proving possession beyond a reasonable doubt. Moreover, the Commonwealth presented no witnesses or other evidence to prove that Appellant was involved in the drug-related activities going on in her apartment.

A finding that Appellant exercised dominion and control over the drugs in this case would be a conviction based on pure speculation and conjecture. "It is well settled that facts giving rise to mere 'association,' 'suspicion' or 'conjecture,' will not make out a case of constructive possession." *Commonwealth v. Valette*, 531 Pa. 384, 390, 613 A.2d 548, 551 (1992). *See Commonwealth v. Chenet*, 473 Pa. 181, 373 A.2d 1107 (1977); *Commonwealth v. Fortune;* and *Commonwealth v. Tirpak*, 441 Pa. 534, 272 A.2d 476 (1971).

In *Macolino*, we observed that reversal of the husband's possession conviction "would provide a privileged sanctuary for the storage of illegal contraband. Simply by storing contraband in a place controlled by more than one party, a spouse, roomate [sic], partner, would render all impervious to prosecution." *Id.* 503 Pa. at 210, 469 A.2d at 136. Because the contraband in the instant case was not found in an area of equal access and control, the "privileged sanctuary" this Court refused to endorse does not here exist. To the contrary, following the Opinion in Support of Affirmance, the burden "[will have] been effectively shifted to the defendant to disprove [her] intent to exercise control over the contraband, a result which offends the most basic principles of our system of

involvement in the drug related activities giving rise to the issuance of the search warrant. On December 13 1989, the court granted Appellant's motion. Subsequently, the Commonwealth declined to produce the informant, and on January 25, 1990, the court dismissed the case. On appeal, Superior Court found that the lower court had abused its discretion in ordering the production of the confidential informant and vacated the order discharging Appellant. *Commonwealth v. Jackson*, 409 Pa.Super. 568, 598 A.2d 568 (1991). Appellant's petition for allocatur was subsequently denied. *Commonwealth v. Jackson*, 529 Pa. 668, 605 A.2d 333 (1992).

justice." *Mudrick*, 510 Pa. at 312, 507 A.2d at 1215 (Zappala, J., dissenting).

We conclude that while the evidence was sufficient to show that Appellant was a resident in a home in which drug-related activities were taking place, and while Appellant may have been aware of such, this is not sufficient to support a finding that she exercised dominion and control over the drugs.

The Order of the Superior Court should be reversed and judgment of sentence vacated.

FLAHERTY and CAPPY, JJ., join this Opinion in Support of Reversal.