

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-29-1997

# Jackson v. Byrd

Precedential or Non-Precedential:

Docket 95-2118

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Jackson v. Byrd" (1997). *1997 Decisions.* Paper 21.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/21

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 95-2118

———————

CHRISTINE JACKSON,

Appellant

v.

MARY LEFTRIDGE BYRD, SUPERINTENDENT;
THE DISTRICT ATTORNEY FOR PHILADELPHIA
COUNTY; THE ATTORNEY GENERAL OF THE
STATE OF PENNSYLVANIA

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 95-05152)

———————

Submitted under Third Circuit LAR 34.1(a)
December 10, 1996

BEFORE:  BECKER, MANSMANN, and GREENBERG, Circuit Judges

(Filed: January 29, l997)

———————

OPINION OF THE COURT

———————

Laurence R. Feinstein
1800 Callowhill Street
Philadelphia, PA 19130

Attorney for Appellant

Donna G. Zucker
Chief, Federal Litigation
Ronald Eisenberg
Deputy District Attorney
Arnold H. Gordon
First Assistant District Attorney
Lynne Abraham
District Attorney
Office of District Attorney
1421 Arch Street
Philadelphia, PA 19102

Attorneys for Appellees

GREENBERG, Circuit Judge.

Christine Jackson appeals from an order entered on December 15, 1995, denying her petition for a writ of habeas corpus. These habeas corpus proceedings arise in the aftermath of Jackson's conviction on July 2, 1992, at a bench trial in the Court of Common Pleas of Philadelphia County, Pennsylvania. At that trial, the court found Jackson guilty of possession of a controlled substance and possession of a controlled substance with the intent to deliver. It subsequently sentenced her to a term of four to eight years' imprisonment.

The state trial judge made the following findings of fact in a written opinion denying Jackson's post-trial motions:

1. On December 16, 1988, at approximately 10:00 p.m., officers from the Philadelphia Police Department executed a search warrant for Jackson's apartment. The search warrant was executed based on information from an informant who claimed to have worked for two people, John and Len, who had drugs in the apartment.

2. Jackson was the lessee of the apartment, and admitted that she had a younger brother named John who also lived in the same apartment.

3. The apartment had a living space consisting of a combination living room, dining room, and kitchen, in addition to two bedrooms.

4. Jackson and her son, who shared one bedroom, were present during the search.

5. In the rear bedroom, the police found an ice chest belonging to Jackson which contained 41 clear bags each containing approximately 40 clear plastic vials filled with crack cocaine, and 14 clear bags each containing approximately 20 plastic packets of cocaine. There were approximately 297 bags and 1,683 vials. The total weight of the crack/cocaine was in excess of 250 grams.

6. The police also found a heat sealer, scale, loaded .38 calibre handgun, and loaded .9 mm handgun in the rear bedroom.

7. In a kitchen cabinet, the police found two scales and a heat sealer. In a closet next to Jackson's bedroom, the police found a duffel bag filled with thousands of empty vials and packets, and a loaded shotgun.

8. The rear bedroom, kitchen cabinets, and closet were not locked.

9. Jackson admitted to using the kitchen cabinets and the closet.

10. Police found proof of residency for the apartment in the form of a telephone bill, an electric bill, and a lease, all of which named Jackson.

11. An expert witness, if called, would have testified that the amount of illegal drugs and drug paraphernalia found in the apartment were indicative of possession with the intent to deliver, rather than mere possession.

Commonwealth v. Jackson, No. 8901-0957 (Pa. C.P. Jan. 22, 1993). Based on these findings of fact, the trial court concluded that (1) Jackson had access to all areas of the apartment, including the rear bedroom, (2) the amount of illegal drugs and drug paraphernalia found in the apartment demonstrated that they were possessed with intent to deliver, and (3) Jackson was a willing participant in the drug dealing occurring in her apartment.

Jackson appealed her conviction to the Pennsylvania Superior Court which affirmed. Commonwealth v. Jackson, 638 A.2d 268 (Pa. Super. Ct. 1993) (table). She then obtained allocatur from the Pennsylvania Supreme Court which affirmed her conviction by an equally divided court. Commonwealth v. Jackson, 659 A.2d.

549 (Pa. 1995) (table). She asked for relief on appeal on the sole ground that the evidence was insufficient to support her conviction.

Jackson thereafter filed a petition for a writ of habeas corpus in the district court pursuant to 28 U.S.C. § 2254. On November 15, 1995, a magistrate judge issued a report recommending that the district court deny the petition and find that there was no probable cause to appeal. On December 15, 1995, the district court adopted this report and recommendation and denied the petition.

Jackson appealed, and we granted her request for a certificate of probable cause. The sole issue on this appeal is whether sufficient evidence supported Jackson's conviction on charges of possession of a controlled substance and possession of a controlled substance with the intent to deliver. Inasmuch as the district court relied on the state court record, we exercise plenary review of the district court's order on this appeal. Zettlemoyer v. Fulcomer, 923 F.2d 284, 291 (3d Cir.), cert. denied, 502 U.S. 902, 112 S.Ct. 280 (1991). We do not consider the effect of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214, which Congress enacted while this appeal was pending, because even under prior law, which may have been less deferential to the state court proceedings than now would be the case, (see Berryman v. Morton, ___ F.3d ____, 1996 WL 659354 at *16 (3d Cir. Nov. 14, 1996)), Jackson is not entitled to habeas relief.

4

Under 28 U.S.C. § 2254(d), prior to its redesignation as 28 U.S.C. § 2254(e) and its amendment by section 104 of the Antiterrorism and Effective Death Penalty Act of 1996, a federal court presumes that state court findings of fact are correct if the following requirements are met: there was (1) a hearing on the merits of a factual issue, (2) with findings made by a state court of competent jurisdiction, (3) in a proceeding to which the petitioner and the state were parties, (4) and the findings are evidenced by a written finding or opinion, or other reliable and adequate written indicia. See also Reese v. Fulcomer, 946 F.2d 247, 254-55 (3d Cir. 1991), cert. denied, 503 U.S. 988, 112 S.Ct. 1679 (1992). This presumption of correctness applies unless the state court's factual determinations are not fairly supported by the record. 28 U.S.C. § 2254(d)(8). Thus, section 2254(d) "'reflect[ed] a clear congressional policy favoring deference to state findings of fact absent good cause for rejecting such findings.'" Reese, 946 F.2d at 256 (quoting Nelson v. Fulcomer, 911 F.2d 928, 932 (3d Cir. 1990)).

Federal courts, however, do not accord deference under section 2254(d) to state court legal rulings. See McAleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir.), cert. denied, 510 U.S. 1028, 114 S.Ct. 645 (1993). Similarly, federal courts are not bound by any ultimate legal conclusion reached by a state court in deciding a mixed question of law and fact. Deputy v. Taylor, 19 F.3d 1485, 1494 (3d Cir.), cert. denied, 114 S.Ct. 2730 (1994). Of course, the "specific historical facts found by a state court in the course of deciding [a mixed question] are

5

subject to deference by § 2254(d) unless they are not supported by the record." Id. at 1494-95.

As we have indicated, the sole issue in this case is whether there was sufficient evidence to support Jackson's conviction of possession of a controlled substance and possession of a controlled substance with the intent to deliver. Fourteenth Amendment due process guarantees protect an individual from "suffer[ing] the onus of a criminal conviction except upon sufficient proof--defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 443 U.S. 307, 316, 99 S.Ct. 2781, 2787 (1979). In a federal habeas corpus proceeding where sufficiency of the evidence is at issue, Jackson v. Virginia sets forth the applicable standard:

[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . . does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Id. at 318-19, 99 S.Ct. at 2788-89 (citations omitted) (emphasis in the original).

The parties agree that the prosecution could not prove that Jackson had actual possession of the cocaine because the drugs were found in her apartment, and not on her person. Thus, the prosecution sought to prove that Jackson had constructive possession of the cocaine. As defined by the Pennsylvania

6

Supreme Court, constructive possession of contraband is conscious dominion over the illegal substance, the power to control it, and the intent to exercise the control. Commonwealth v. Mudrick, 507 A.2d 1212, 1213 (Pa. 1986); Commonwealth v. Carroll, 507 A.2d 819, 820-21 (Pa. 1986); Commonwealth v. Macolino, 469 A.2d 132, 134 (Pa. 1983). Since determining whether a defendant had constructive possession of contraband is not amenable to "bright line" tests, Carroll, 507 A.2d at 821, the finder of fact may infer an intent to maintain a conscious dominion from the totality of the circumstances. Macolino, 469 A.2d at 134.

In Macolino, the Pennsylvania Supreme Court found that the defendant husband had equal access to, and thus constructive possession of, contraband found in the bedroom he shared with his wife. Id. at 135-36. The court found constructive possession in Carroll when the police found contraband in the hotel room that the defendant husband shared with his wife. Carroll, 507 A.2d at 821. Finally in Mudrick, in finding that the defendant constructively possessed contraband found in the bedroom he shared with his fiancee, the court stated, "[w]e hold today that even absent a marital relationship constructive possession may be found in either or both actors if contraband is found in an area of joint control and equal access." Mudrick, 507 A.2d at 1214. In contrast to these three cases, it is more difficult to prove a constructive possession case if the prosecution does not demonstrate that the defendant resides in the home where the police recover the contraband. See Commonwealth v. Valette, 613

7

A.2d 548 (Pa. 1992); Commonwealth v. Rodriguez, 618 A.2d 1007 (Pa. Super. Ct. 1993).

While naturally the facts with respect to whether a defendant has constructive possession of contraband vary in each case, in Commonwealth v. Aviles, 615 A.2d 398 (Pa. Super. Ct. 1992) (in banc), cert. denied, 115 S.Ct. 78 (1994), the Pennsylvania Superior Court found that the defendant had constructive possession of the drugs in a case similar to this one. Consequently, Aviles is a significant precedent on this appeal. There the defendant, Aviles, leased a rowhouse in which she subleased the middle and rear bedrooms to her sister and brother-in-law. Aviles slept with her three children in the front bedroom. During a search, the police found drugs and drug paraphernalia in the middle and rear bedrooms. The Superior Court found that Aviles had access to all the bedrooms, stating that she was, after all, the lessee. Id. at 403. The court also cited additional facts to support the conviction: an informant had witnessed Aviles's sister and brother-in-law engaging in drug activities at the residence; Aviles was present at the time of the search; and the bedrooms containing the drugs were next to defendant's bedroom. Id.

Under the recent interpretations of Pennsylvania law by state courts, the findings of fact made in Jackson's case sufficiently support her conviction of constructive possession of drugs. Jackson admitted that she was the sole lessee of the apartment, and the police found proof of her residency in the form of a telephone bill, an electric bill, and a lease, all in

8

Jackson's name.  Furthermore, in the face of conflicting testimony between a police officer and Jackson, the state trial court found credible the officer's testimony that the rear bedroom, the room in which the police found the drugs, which Jackson's brother used, was not locked.  Also, it is not disputed that at the time the police executed the warrant only Jackson and her infant son were in the apartment so that her brother could not have excluded her at the time if she sought to enter the rear bedroom.

Accordingly, the trial judge reasonably found that Jackson had access to and control of all areas of the apartment, including the rear bedroom.  In addition, the trial judge considered the following facts with respect to Jackson's intent to control the contraband:  (1) the ice chest containing the drugs belonged to Jackson; and (2) the police found drug paraphernalia, e.g., weight scales, a heat sealer, thousands of empty vials and packets, and a loaded shotgun, in the kitchen cabinet and the closet that Jackson shared with her brother.  Based on the totality of the circumstances, the trial judge found Jackson guilty of constructive possession and constructive possession with intent to distribute.  Commonwealth v. Jackson, No. 8901-0957, slip op. at 2-6.

We point out that the finding by the state trial judge that Jackson owned the ice chest is unassailable.  Even though on the appeal she argues that she had discarded the ice chest before the police executed the warrant, Jackson testified at the trial that she owned the ice chest when she first moved into the

9

apartment.  While she testified that after she acquired a refrigerator she had no further need for the ice chest, she also testified that "I didn't give the ice chest to anyone.  I just put the ice chest aside because I was no longer using it."  Clearly, she never gave the ice chest to her brother for she did not even know that he was using it.

We recognize that Jackson testified that her younger brother, John, used the rear bedroom, while she and her son shared the front bedroom.  Furthermore, we realize that the police did not find any drugs, drug paraphernalia, or weapons in Jackson's bedroom or on her person.  Thus, Jackson understandably contrasts her relationship with her brother to the familial relationships of the defendants with other co-tenants in Macolino, Carroll, and Mudrick, asserting that the state failed to present evidence that her brother's bedroom was anything other than a private place subject to his exclusive control.  In Aviles, however, the Superior Court found that the defendant was in constructive possession of the drugs in a situation in which the defendant owned or leased and lived in the residence where the drugs were found.

Although Jackson v. Virgina sets forth a federal test for sufficiency of the evidence which is applicable in habeas corpus proceedings, federal courts in habeas corpus proceedings nevertheless look to the evidence the state considers adequate to meet the elements of a crime governed by state law.  See Brumley v. Detella, 83 F.3d 856, 862-65 (7th Cir. 1996); Chalmers v. Mitchell, 73 F.3d 1262, 1272-73 (2d Cir.) (deferring to state's

10

view of what constituted sufficient evidence to convict on state crimes), cert. denied, 117 S.Ct. 106 (1996). Pennsylvania considers being a lessee or owner of the residence an important factor in establishing dominion and control over the contraband. While it is true that the police found the drugs in Jackson's brother's bedroom, the significance of this circumstance is diluted by the facts that the bedroom was unlocked, Jackson and only her young son were present when the police executed the warrant, the ice chest containing the drugs belonged to Jackson, and the drug paraphernalia and a shotgun were located in the closet next to Jackson's bedroom and in the kitchen cabinets. Overall, we are constrained to conclude there was sufficient evidence for any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.

In reaching our result, we have not overlooked United States v. Jenkins, 90 F.3d 814 (3d Cir. 1996), and United States v. Brown, 3 F.3d 673 (3d Cir.), cert. denied, 510 U.S. 1017, 114 S.Ct. 615 (1993). Jenkins and Brown were direct appeals in drug constructive possession cases in which we found that the evidence was not sufficient to sustain convictions. These cases, however, are distinguishable from this one on the facts. In Jenkins, the defendant was in a very different situation than Jackson, as he was charged with constructive possession of drugs in an apartment of which he was not the lessee, a point we emphasized in our opinion. 90 F.3d at 816, 820. Similarly, in Brown the appellant was charged with constructive possession of drugs in a house to which she had access or in which she resided, but which she

11

neither owned nor leased.  Furthermore, none of the Brown appellant's possessions were found in rooms where drugs were seized.

Jackson's situation was different because she was the lessee of the apartment and had access to all parts of it, circumstances which logically tend to support a conclusion that she had constructive possession of the apartment's contents.  In addition, unlike in Jenkins and Brown, the police found the drugs in this case in a container, i.e., the ice chest, that Jackson owned.

Jenkins and Brown also differ from this case in another important respect.  In Jenkins when the police entered the apartment there were adults other than the appellant inside, and in Brown when the police entered the house the appellant was not even there.  Rather, there was another adult in the house and the appellant came upon the scene later.  Jackson's situation was different because, as we already have pointed out, except for her young son, she was alone in the apartment when the police executed the warrant.  Of course, she had ready access to the drugs as they were in the unlocked rear bedroom.

These facts, as well as the other facts we have set forth, made it reasonable for the trial court as the trier of fact to conclude that Jackson had conscious dominion and control over the contraband found in the apartment, and thus we would affirm in this case even if we were deciding this case on appeal from a district court conviction.  It therefore follows that we would be overreaching if we reversed the denial of Jackson's

12

petition for a writ of habeas corpus. In these circumstances, we have no need to consider whether there is a range of constructive possession cases in which on the same facts we would reverse convictions under federal law but would deny habeas corpus petitions challenging confinement following state convictions. See Brumley, 83 F.3d 856; Chalmers, 73 F.3d 1262. In principle, arguably there could be such a group of cases, as the distinction simply would reflect differences in the definition of what conduct constituted constructive possession under state and federal law. Cf. Zettlemoyer, 923 F.2d at 291 (In a habeas corpus proceeding following a state conviction "we do not exercise the supervisory power that we might possess on an appeal from a conviction in the district court.").

In view of the aforesaid, we will affirm the order of December 15, 1995.


CHRISTINE JACKSON v. MARY LEFTRIDGE BYRD, SUPERINTENDENT; THE DISTRICT ATTORNEY FOR PHILADELPHIA COUNTY; THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, No. 95-2118


BECKER, Circuit Judge, dissenting.

The term "constructive possession" has a precise legal meaning, which does not differ between federal and state (here Pennsylvania) law. To constructively possess a controlled substance one must have conscious dominion or control over it, and intend to exercise that dominion or control. United States v. Jenkins, 90 F.3d 814, 817-18 (3d. Cir. 1996); United States v.

13

<u>Brown</u>, 3 F.3d 673, 680 (3d Cir. 1993); <u>Commonwealth v. Mudrick</u>, 507 A.2d 1212, 1213 (Pa. 1986); <u>Commonwealth v. Carroll</u>, 507 A.2d 819, 820-21 (Pa. 1986); <u>Commonwealth v. Macolino</u>, 469 A.2d 132, 134 (Pa. 1983).  In my view, the evidence in this case will not, as a matter of due process, <u>see</u> <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), support the conviction of Christine Jackson for constructive possession of the cocaine contained within the ice chest in her brother's room.  I therefore dissent.  I turn first to an analysis of the record, and then to the legal issues.

I.

A.

The linchpin of the majority opinion is its conclusion that Jackson, because she was the lessee of the apartment, had access to and control of all areas of the apartment, including the rear bedroom used by her brother, and hence of the ice chest and the cocaine.  In my view, this conclusion is supported by neither the law nor the facts.

The Commonwealth has cited no case establishing, as a matter of real property law or otherwise, that a lessee can enter his or her sublessee's room at will.  Nor does the record suggest such entry or access as a matter of fact, only the contrary. Finally, and most importantly, there is nothing in the record that reflects a conscious intention by Jackson to exercise

2

dominion or control over the bedroom or the drugs, or from which such an intention could be inferred.

The state trial judge made much of the fact that the ice chest "belonged" to Jackson, but the uncontradicted evidence is that she had discarded it when she got a refrigerator and did not know that her brother was using it to store drugs. Although the police found the door to her brother's room unlocked (Jackson had always thought that it was locked), there is no evidence that she was ever in the room, much less knew what its contents were. None of Jackson's possessions was found in her brother's bedroom, nor were her fingerprints detected on any of the drugs or other items seized.

There was, to be sure, some drug paraphernalia and a shotgun in a common area of the apartment. But shotguns are not the weapon of choice among drug dealers, and thus cannot inherently support an inference of drug possession. And the drug paraphernalia, even if Jackson knew about it, is simply not enough to link Jackson to the cocaine in her brother's room or to any kind of drug dealing, given the absence of other inculpatory facts. And it surely does not supply evidence of conscious dominion or control. Indeed, while the drug paraphernalia in the kitchen cabinet and closet may logically demonstrate that Jackson's brother had dominion and control over the common areas of the apartment, it does not suggest that Jackson had dominion

3

or control over the bedroom which, on this record, was subject to her brother's exclusive, private use.

B.

The case that the majority puts most stock in, and on which its position essentially stands or falls, is Commonwealth v. Aviles, 615 A.2d 398 (Pa. Super. Ct. 1992) (in banc), cert. denied, 115 S. Ct. 78 (1994). I find Aviles of little value. Aviles was a 5-4 decision of an intermediate appellate court (which is not entitled to deference, but only to weight if it is persuasive, which, I think, it is not). It was not cited in either the majority or the dissenting opinion of the Pennsylvania Supreme Court in this case.[1] I note in this regard that Jackson's conviction was affirmed by the Pennsylvania Supreme Court in a 3-3 vote. Justice Zappala's forceful dissent, which articulates the same concerns that I express herein, was joined by Justice Cappy and (now Chief) Justice Flaherty, so that of the current Pennsylvania Supreme Court Justices, the vote was 3-2 in favor of Jackson. I do not believe that Aviles would be approved by Pennsylvania's present high court.

It seems clear to me that under our jurisprudence, see, e.g., United States v. Jenkins, 90 F.3d 814 (3d Cir. 1996), and United States v. Brown, 3 F.3d 673 (3d Cir. 1993), the evidence against Jackson would be insufficient to sustain a conviction

_____

1. It is also not even cited by the Commonwealth in its present brief.

4

based on constructive possession.  The facts in <u>Brown</u> are similar to the facts in Jackson's case: acting on a tip, the police searched Brown's home for drugs.  During the search, Ama Baltimore arrived at the house, inserted a key into the lock, and was arrested as she entered.  She protested, "But you can't arrest me because I am in my own house."  In the upstairs sewing room, the police found a pair of shorts and a switchblade, both of which Baltimore admitted were hers.  Large quantities of heroin, cocaine powder, and crack cocaine were found in the refrigerator in the kitchen, the kitchen closet, and one of the upstairs bedrooms.  Equipment and supplies to prepare, cook, cut, and distribute the drugs were also found in the bedroom.

This Court overturned Baltimore's conviction for insufficient evidence of possession, holding that, although the evidence showed that she had access to, or resided in the house and knew of the presence of the drugs, it did not, without more, establish that she had conscious dominion or control over the drugs.  <u>Brown</u>, 3 F.3d at 682–83.  "[M]ere proximity to the drug or mere presence on the property where it is located or mere association with the person who does control the drug or the property, is insufficient to support a finding of possession." <u>Id.</u> at 680 (citing <u>United States v. Davis</u>, 461 F.2d 1026, 1036 (3d Cir. 1972)).

We further noted that neither Baltimore, nor any of her possessions, were found in any of the rooms where the drugs were

5

seized, none of her fingerprints was found on any of the drugs or drug paraphernalia, and there was no other evidence that she ever exerted any control over the drugs or drug paraphernalia. Id. at 683. The facts in Brown, we believed, supported the conclusion that she had access to or resided at the residence, but not that she exercised control over the drugs. Id. at 682.

Similarly, in the instant case, aside from the tenuous link sought to be drawn from the discarded ice chest and drug paraphernalia, nothing in the record supports a finding of constructive possession. As stated previously, none of Jackson's possessions was found in her brother's bedroom, nor were her fingerprints detected on any of the drugs or other items seized. In fact, the evidence in Jackson's case is merely consistent with her access to or residence at the apartment, but with no control over the drugs. See Brown, 3 F.3d at 681 (concluding that while the evidence may be sufficient to show that Baltimore was residing at the home and knew that the drugs were in the house, the evidence did not support a finding that she exercised dominion or control over the drugs). Hence, I disagree with the majority's position that the facts in Jackson's case meet the federal constructive possession standard.

## II.

Although it does not expressly so hold, the majority nonetheless seems to intimate that the legal sufficiency standard on habeas corpus is somehow different (and diluted) when a state

6

rather than federal conviction is at issue.  The majority

explicitly disclaims such a holding, suggesting that it would

apply a unitary standard:

> In these circumstances, we have no need to consider whether there is a range of constructive possession cases in which on the same facts we would reverse convictions under federal law but would deny habeas corpus petitions challenging confinement following state convictions. See Brumley, 83 F.3d 856; Chalmers, 73 F.3d 1262.  In principle, arguably there could be such a group of cases, as the distinction simply would reflect differences in the definition of what conduct constituted constructive possession under state and federal law.  Cf. Zettlemoyer, 923 F.2d at 291 (In a habeas corpus proceeding following a state conviction "we do not exercise the supervisory power that we might possess on an appeal from a conviction in the district court.").

I applaud the disclaimer, but find it elusive and unconvincing.

I draw this conclusion because if a unitary standard is, in fact,

being imposed, the majority has strayed from (or diluted) the

federal cases.  I think it important to make clear in this regard

that, for the Jackson v. Virginia analysis, there can be no

difference in the definition of what conduct constitutes

constructive possession.

As previously noted, Pennsylvania's definition of

"constructive possession" is identical to the federal definition.

While it is true that federal courts have sometimes deferred to

states and their interpretations of what constitutes sufficient

evidence to convict on state crimes, see Brumley v. Detella, 83

F.3d 856 (7th Cir. 1996); Moore v. Deputy Commissioner of SCI–

Huntingdon, 946 F.2d 236 (3d Cir. 1991), these were instances in

which the federal courts looked strictly at state law because there was no analogous federal statute.  But see Chalmers v. Mitchell, 73 F.3d 1262 (2d Cir. 1996).  Jackson's appeal, however, is distinguishable since, in addition to state law, federal case law has also defined and interpreted constructive possession.

As stated above, I believe that the evidence in Jackson's case is insufficient to meet the federal and state definitions of constructive possession.  But even if Pennsylvania's standard for constructive possession were lower (which it is not), it would be incorrect and manifestly unjust for the disposition of Jackson's appeal to differ depending on the forum, state or federal, because evidence that fails to meet federal due process standards in a federal forum should be insufficient to meet the guarantees of federal due process in a state court.  In other words, regardless of the forum in which the case is heard, the standard for satisfying federal due process should be uniform.  This is especially true in light of the fact that the federal and state statutes for possession of drugs are similar, the definitions of constructive possession are identical, and the (federal) Jackson v. Virginia, 443 U.S. 304 (1979), standard for reviewing sufficiency of the evidence is perforce the overarching standard.  I also note, moreover, that the standard of review for sufficiency of the evidence in Pennsylvania is identical to the federal Jackson v. Virginia

8

standard.  <u>Evans v. Court of Common Pleas</u>, 959 F.2d 1227, 1232 (3d Cir. 1991).

III.

Because there is an absence of facts justifying an inference that Jackson had conscious dominion or control over the contraband, or that she intended to exercise that dominion or control, as a matter of due process this conviction should not stand.  Accordingly, I would reverse the district court's denial of habeas corpus relief.