J-A18034-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| RAHEIM JACKSON, | : | |
| | : | |
| Appellee | : | No. 2515 EDA 2017 |

Appeal from the Order June 29, 2017
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003500-2017

BEFORE:    STABILE, J., STEVENS, P.J.E.* and STRASSBURGER,** J.

MEMORANDUM BY STRASSBURGER, J.:    **FILED NOVEMBER 14, 2018**

The Commonwealth of Pennsylvania appeals from the June 29, 2017 order granting the motion to quash charges filed by Raheim Jackson (Jackson). Upon review, we reverse and remand for trial.

In late 2016, Jackson was arrested and charged with carrying a firearm without a license, carrying a firearm in public in Philadelphia, possession of a controlled substance, and possession of a small amount of marijuana.[1] A preliminary hearing was held on April 21, 2017. At the hearing, the Commonwealth offered the testimony of Sergeant Christian Duchossois and Officer Timothy Linahan. As summarized by the trial court:

---

[1] At the beginning of the preliminary hearing, the Commonwealth amended the complaint to add one count of conspiracy. The Commonwealth "specified the firearm charges as the substantive offenses of the conspiracy." Trial Court Opinion, 10/3/2017, at 1. *See also* N.T., 4/21/2017, at 4-5.

*Former Justice specially assigned to the Superior Court.

**Retired Senior Judge assigned to the Superior Court.

On December 16, 2016[,] at approximately two o'clock in the afternoon, Sergeant Duchossois and [Officer] Linahan were traveling in uniform in an unmarked vehicle on the 3900 block of Old York Road[ in Philadelphia]. They observed a silver Chevy Impala make a right turn onto Old York Road behind the police vehicle. Sergeant Duchossois testified that Tyreek Collier operated the [Chevy] and observed it [as well as a white Dodge Charger] traveling at a very high rate of speed weaving in and out of cars[, and at one point, both vehicles crossed over into the southbound lane while driving northbound to pass the vehicle Sergeant Duchossois and Officer Linahan were in]. The officers initiated a vehicle stop of both vehicles by activating their lights and sirens. [The two vehicles pulled over to the side of the road]. As the officers exited their vehicle, the Chevy and the Dodge drove off[.] After circling the block, the police relocated the Chevy. Officer Linahan testified that they lost sight of the Chevy for "[m]aybe ten seconds." Upon relocating the Chevy, Sergeant Duchossois testified that [the officers] observed both defendants leaving the [Chevy]. Sergeant [Duchossois] clarified upon cross-examination that "Collier [left] the driver's side. [Jackson left] the passenger side." After they exited the Chevy, both males "met up on the sidewalk. At that time, [Jackson] discarded a green backpack into a recycle bin on the sidewalk. Both [Jackson and Collier] began to run south into the street into the parking lane...."

Officer Linahan testified that he observed Collier exiting the Chevy with a black bag and that he discarded it "in front of the vehicle that was parked on the highway." He further testified that he did not know specifically where the black bag came from as Collier exited the vehicle. Upon cross-examination, Officer Linahan testified that Collier ran after discarding the black bag.

Upon stopping [Jackson], Sergeant Duchossois recovered cash and marijuana from his person. [Sergeant Duchossois] recovered the black backpack in front of the parked Chevy. Recovered within the black backpack was a loaded firearm along with marijuana that matched in quantity and packaging the marijuana recovered from [Jackson's] person. Upon first describing the recovery location of the black backpack, Officer Linahan testified that "[it] wasn't under anything. It was right in front [of] the vehicle. It was right in the open." Officer Linahan further clarified, "[i]t was like sticking out of the front of the vehicle, but it wasn't covered enough to where it couldn't be seen."

Sergeant Duchossois also recovered a green backpack from the recycle bin and it contained mail in the name of "Tyreek Jackson" along with a prayer rug and "[n]umerous credit cards in names not belonging to either[" Jackson or Collier]. At the recovery scene, Collier identified himself as "Tyreek Jackson[.]" The record does not indicate whether anything was recovered from Collier's person.

Trial Court Opinion, 10/3/2017, at 2-4 (record citations and some quotation marks omitted). Following the hearing, the magisterial district judge held over all charges for trial. N.T., 4/21/2017, at 28-29. On April 26, 2017, Jackson filed a motion to quash.

On June 28, 2017, the Honorable Scott DiClaudio heard [Jackson's] motion to quash wherein the [trial c]ourt incorporated the preliminary hearing notes of testimony into the record and thereafter heard argument. On June 29, 2017, after holding the motion under advisement, t[he trial c]ourt quashed the firearms and conspiracy charges. The Commonwealth filed a [m]otion for [r]econsideration of th[e trial c]ourt's order quashing the firearm and conspiracy charges. On July 13, 2017, th[e trial c]ourt granted the Commonwealth's request to hold a reconsideration hearing. On August 2, 2017, th[e c]ourt denied the Commonwealth's reconsideration motion.

Trial Court Opinion, 10/3/2017, at 2-4. This timely-filed appeal followed.[2,3]

---

[2] Both the trial court and the Commonwealth complied with Pa.R.A.P. 1925.

[3] The Commonwealth has the right to appeal the trial court's June 29, 2017 order pursuant to Pa.R.A.P. 311(d), which provides that "[t]he Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." In this case, the Commonwealth certified in its notice of appeal that the order quashing the firearm and conspiracy charges "terminates or substantially handicaps the prosecution." Notice of Appeal, 8/8/2017.

The Commonwealth presents one issue for this Court's review: "Did the Commonwealth present sufficient evidence to establish a *prima facie* case that [Jackson] committed the crimes of carrying a firearm without a license, carrying a firearm in public in Philadelphia, and conspiracy?" Commonwealth's Brief at 2.

We consider the Commonwealth's issue mindful of the following.

> [I]t is settled that the evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary. Indeed, the trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, *prima facie* burden to make out the elements of a charged crime. … To properly dispose of this appeal, we must proceed to examine the merits of the underlying substantive issues under the correct standard— *i.e.,* we will engage in plenary review of both claims as questions of law.

*Commonwealth v. Karetny*, 880 A.2d 505, 513 (Pa. 2005) (citations omitted).

> At the pre-trial stage of a criminal prosecution, it is not necessary for the Commonwealth to prove the defendant's guilt beyond a reasonable doubt, but rather, its burden is merely to put forth a *prima facie* case of the defendant's guilt. A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense. The evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to go to the jury. Moreover, [i]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case.

*Commonwealth v. Huggins*, 836 A.2d 862, 866 (Pa. 2003) (citations and quotation marks omitted).

In this case, the trial court held that the Commonwealth did not provide sufficient evidence to establish a *prima facie* case for the firearm and conspiracy charges because the Commonwealth did not prove that Jackson had possession of the firearm found in the backpack. Trial Court Opinion, 10/3/2017, at 6.

Because Jackson was not found with the firearm on his person, the Commonwealth was required to present evidence that Jackson had constructive possession of the firearm. *Commonwealth v. Kirkland*, 831 A.2d 607, 611 (Pa. Super. 2003). "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." *Commonwealth v. Jackson*, 659 A.2d 549, 551 (Pa. 1995) (quoting *Commonwealth v. Mudrick*, 507 A.2d 1212, 1213 (Pa. 1986)).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa. Super. 2004) (internal citations omitted). "To find constructive possession, the power and intent to

control the contraband does not need to be exclusive to the defendant. Our Supreme Court has recognized that constructive possession may be found in one or more actors where the item [at] issue is in an area of joint control and equal access." ***Commonwealth v. Vargas***, 108 A.3d 858, 868 (Pa. Super. 2014) (internal quotation marks omitted).

The trial court found that the "Commonwealth failed to show [that it was] more likely than not that [Jackson] had knowledge of the firearm and as a result, there was insufficient evidence to prove that [Jackson] had the power to control the firearm, a prerequisite to a finding of constructive possession." Trial Court Opinion, 10/3/2017, at 6. Specifically, the trial court found the Commonwealth did not elicit testimony establishing: (1) where Jackson was seated in the vehicle; (2) Jackson's "vantage point, if any, of the black backpack while inside the vehicle, and (3) whether Jackson "knew the black backpack contained the gun." ***Id.*** at 7.

The court found Jackson's flight after abandoning the vehicle to be "more indicative of his consciousness of guilt relating to the marijuana recovered from his person and the credit cards belonging to other persons recovered from the green backpack that [Jackson] discarded[,]" and held that the evidence "directly refute[d] the Commonwealth's contention that [Jackson] and Collier exited the vehicle in a 'hurry' causing them to mistakenly grab each other's backpack." ***Id.*** at 7-8 (emphasis in original omitted). Further, although the court acknowledged "the marijuana recovered from the

- 6 -

black backpack matched the marijuana found on [Jackson's] person," it opined that this did not prove that Jackson knew what was in the black backpack, and instead "may lend an inference that [Jackson] and Collier had purchased marijuana from the same source." *Id.* at 7.

The trial court also concluded that, because there was insufficient evidence to establish Jackson had knowledge of the firearm, he was "incapable" of exercising control over it. *Id.* at 9. Finding the Commonwealth failed to submit sufficient evidence to prove that Jackson constructively possessed the firearm, "it logically follows that [Jackson] and Collier did not have joint constructive possession of the firearm." *Id.* at 10-14. In sum, the trial court found there was "insufficient evidence, even at a *prima facie* level, to show that [Jackson] constructively possessed the firearm." *Id.* at 15. For these reasons, the trial court submitted that it properly quashed the firearm and conspiracy charges.

> The evidence in the record before [the trial court did] not permit a reasonable inference that [Jackson] had the power to control or knew about the firearm. Furthermore, th[e trial c]ourt conclude[d] that there is not a scintilla of evidence that [Jackson] intended to control the firearm as Collier exerted affirmative steps to demonstrate his exclusive control over the gun. Furthermore, th[e the trial court found] that the Commonwealth also failed to show sufficient *prima facie* evidence that [Jackson] conspired with Collier to possess the firearm.

*Id.*

Viewing this case in the light most favorable to the Commonwealth, the evidence established that Jackson and his cohort Collier were observed exiting

a vehicle, each discarding a backpack as they began their flight from police. N.T., 4/21/2017, at 9-10. Once apprehended, Jackson was subjected to a search of his person, and Sergeant Duchossois recovered cash and marijuana. *Id.* at 12-13. The marijuana recovered from Jackson's person matched the quantity and packaging of the marijuana recovered from the black backpack, which also contained the firearm at issue. *Id.* at 13-14.

> When deciding whether a *prima facie* case was established, we must view the evidence in the light most favorable to the Commonwealth, and we are to consider all reasonable inferences based on that evidence which could support a guilty verdict. The use of inferences is a process of reasoning by which a fact or proposition sought to be established is deduced as the logical consequence from the existence of other facts that have been established. An inference is no more than a logical tool enabling the trier of fact to proceed from one fact to another, if the trier believes that the weight of the evidence and the experiential accuracy of the inference warrant so doing. Evidentiary inferences are constitutionally infirm unless the inferred fact is more likely than not to flow from the proved fact on which it is made to depend.

*Commonwealth v. Williams*, 911 A.2d 548, 552 (Pa. Super. 2006) (internal citations and quotation marks omitted).

Drawing all reasonable inferences from these facts, Jackson's presence in the vehicle with the backpack, his flight from police, and the marijuana recovered from his person that matched the marijuana in the backpack with the firearm, provided circumstantial evidence to allow the court to infer that: (1) the black backpack containing the firearm and identically packaged marijuana was Jackson's backpack such that Jackson may have had knowledge of the contents of the backpack; and (2) Jackson, who was in the

Chevy with Collier and the backpack, had the ability to possess and control the backpack. The former inference is bolstered by the fact that the green backpack the officers observed Jackson discard contained mail addressed to "Tyreek Jackson," the same name Collier provided to police. *Id.* at 15.

Based on the totality of the circumstances, it is reasonable to infer that Jackson had joint constructive possession of the firearm. While this evidence may not be sufficient to sustain a conviction, that is not the burden that the Commonwealth must overcome at this juncture.[4]

In light of the foregoing, we find a *prima facie* case exists for carrying a firearm without a license, carrying a firearm in public in Philadelphia, and conspiracy.

Order reversed. Case remanded for trial. Jurisdiction relinquished.

---

[4] Furthermore, we agree with the Commonwealth that the court's conclusion that Jackson and Collier could have purchased the marijuana from the same source or that Jackson's flight was more indicative of his consciousness of guilt for having marijuana on his person, "departs from the proper standard of review." Commonwealth's Brief at 15. *See Commonwealth v. Landis*, 48 A.3d 432, 448 (Pa. Super. 2012) (finding "the trial court improperly weighed the evidence and failed to properly view the evidence in the light most favorable to the Commonwealth" when it concluded that Landis "only intended to frighten, as opposed to inflict bodily injury" when discharging a firearm, placing great emphasis on where the bullet landed in relation to the police officers).

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: <u>11/14/18</u>