# Commonwealth v. Dargon

C.P. of Lackawanna County, no. 03-CR-1495.

*Paul J. Ware, assistant district attorney,* for Commonwealth.

*James Elliott,* for defendant.

NEALON, *J.,* March 11, 2005—After the defendant was convicted of various drug offenses and sentenced to be incarcerated for eight to 16 years, he filed the instant motion seeking a judgment of acquittal or a new trial. Defendant contends that the recent ruling in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), barred the Commonwealth's use of a non-testifying confidential informant's statements under the "course of conduct" exception to the hearsay rule. Defendant also requests a new trial on the basis of after-discovered evidence and challenges the validity of his consent to search form and the sufficiency of the evidence supporting his convictions for possession of controlled substances with the intent to deliver. Since none of the arguments raised by the defendant entitle him to relief, the defendant's post-sentence motion will be denied.

## I. PROCEDURAL HISTORY

On June 20, 2003, the defendant was arrested and charged with possession of heroin and cocaine with the

intent to deliver, criminal conspiracy to possess heroin and cocaine with the intent to deliver, and possession of heroin and cocaine. Following a preliminary hearing on July 15, 2003, District Justice Joseph Toczydlowski bound all charges over for trial (see transcript of proceedings (T.P.) on 7/15/03, pp. 80-81), and a jury trial was later conducted from January 21, 2004 to January 23, 2004. At the conclusion of the Commonwealth's case, the defendant's demurrer to the conspiracy charges was granted, and the criminal counts alleging possession of controlled substances and possession with the intent to deliver (PWID) were submitted to the jury. (T.P. 1/23/04, pp. 45-47.) On January 23, 2004, the jury found the defendant guilty of three counts of possession and three counts of PWID. (*Id.,* pp. 152-53.)

On April 21, 2004, the defendant was sentenced to three to six years imprisonment and a $10,000 fine for PWID of heroin and five to 10 years incarceration for PWID of cocaine. (T.P. 4/21/04, pp. 31-44.) Defendant's convictions for possession of controlled substances merged with his PWID convictions for purposes of sentencing. Defendant's sentences for PWID of heroin and cocaine were ordered to run consecutively such that the aggregate sentence imposed was eight to 16 years incarceration and a $10,000 fine. (*Id.,* pp. 45-48.)

On May 3, 2004, the defendant's counsel filed a post-sentence motion seeking a judgment of acquittal or a new trial. However, on May 14, 2004, the defendant filed a pro se appeal to the Superior Court of Pennsylvania. After defense counsel filed a petition to discontinue the defendant's pro se appeal without prejudice, the Superior Court of Pennsylvania issued a per curiam order on

October 14, 2004, dismissing the defendant's appeal. By order dated November 19, 2004, a hearing on the defendant's post-sentence motion was scheduled for December 27, 2004, and the parties were directed to submit their supporting and opposing briefs on December 6, 2004 and December 20, 2004. Following the completion of the hearing and oral argument on December 27, 2004, this matter was submitted for a decision.

## II. FACTUAL BACKGROUND

On June 20, 2003, Detective Robert Mazzoni of the narcotics investigation unit of the Lackawanna County district attorney's office was advised by a confidential informant that he could purchase heroin from a 5'5", 130-pound African American male named "Oc" or his girlfriend "Kay" who both resided on Main Street in Old Forge near the intersection of Main Street and Dunn Avenue. The confidential informant further informed Detective Mazzoni that "Oc" operated a brown Corsica which had a temporary registration notice in its window and bore a license plate that read FTD 3761. (T.P. 1/22/04, pp. 48-49, 95, 108.) Detective Mazzoni provided this information to Detective Gunther Pisa and Detective Joseph Jordan who conducted surveillance of the 300 block of North Main Avenue near the intersection of North Main Avenue with Dunn Avenue in Old Forge. The detectives located the brown Corsica in question situated near the property where the defendant and Karlene Bassarath resided at 336 North Main Street, Old Forge.[1] (T.P. 1/23/04, pp. 11, 24-25.)

1. The testimony revealed that Karlene Bassarath had previously resided at 114 N. Rebecca Avenue, Scranton, but had relocated to 336

Once the brown Corsica had been identified, arrangements were made for the confidential informant to make a "controlled buy" of heroin from the defendant. In the presence of Detective Mazzoni, the confidential informant contacted the defendant by cell phone and arranged to meet him at the Price Chopper parking lot in Taylor. The confidential informant was then frisked by Detective Mazzoni to ensure that he had no drugs on his person, and was provided with $200 in serialized currency with which to purchase the heroin. Immediately following the confidential informant's telephone conversation with the defendant, Detectives Pisa and Jordan observed the defendant and Ms. Bassarath exit their residence at 336 North Main Street and enter the brown Corsica. Detectives Pisa and Jordan followed the brown Corsica as it drove from 336 North Main Street, Old Forge, to the parking lot of the Price Chopper in Taylor where Detective Mazzoni was conducting surveillance from an unmarked vehicle. (T.P. 1/22/04, pp. 49-52; T.P. 1/23/04, pp. 11-12, 17-18, 25-26.)

Detective Mazzoni had instructed the confidential informant that if a purchase of heroin was consummated, the confidential informant should exit the Corsica wearing his hat backwards. Once the defendant arrived at the Price Chopper parking lot, Detective Mazzoni observed the confidential informant enter the Corsica and converse with the defendant. As the confidential informant exited the Corsica, he turned his hat backwards thereby signaling to Detective Mazzoni that heroin had been purchased.

N. Main Street, Old Forge, where she resided with the defendant following his release from prison on June 4, 2003. (T.P. 1/22/04, pp. 81, 109, 122.)

(T.P. 1/22/04, pp. 52, 105, 111.) Defendant promptly departed from the Price Chopper parking lot in the Corsica and Detective Pisa and Detective Jordan followed that vehicle as it traveled toward Scranton. Contemporaneously with the defendant's departure from the parking lot, the confidential informant entered Detective Mazzoni's vehicle and provided him with 10 bags of heroin which the confidential informant had purchased from the defendant. (*Id.,* pp. 52-53, 57-59.)

Detective Mazzoni contacted Detectives Pisa and Jordan via their radios and advised them that the confidential informant had in fact purchased heroin from the defendant. Detective Mazzoni, Detective Pisa and Detective Jordan eventually stopped the Corsica in Scranton and the defendant and Ms. Bassarath were taken into custody. Although the detectives conducted a pat-down for weapons pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the defendant and Ms. Bassarath were not formally searched before they were transported to the district attorney's office in separate vehicles. (*Id.,* pp. 53-54, 59-60; T.P. 1/23/04, pp. 12-13, 26-27.) Defendant was transported in the rear seat of Detective Jordan's vehicle, and Detective Jordan later discovered the $200 in serialized currency stuffed between the rear seats of his vehicle where the defendant had been seated. (T.P. 1/22/04, pp. 56-57, 75; T.P. 1/23/04, pp. 28-30.)

After the defendant and Ms. Bassarath were issued their *Miranda* warnings, they informed the detectives that they had both been residing at 336 North Main Street, Old Forge, following the defendant's release from jail approximately two weeks earlier. Defendant admitted to the detectives that more drugs were located at that resi-

dence and the defendant and Ms. Bassarath signed consent forms authorizing the detectives to conduct a warrantless search of their residence at 336 North Main Street, Old Forge. (T.P. 1/22/04, pp. 60-63, 79-81, 118-19, 122, 131.) On the consent to search form signed by the defendant, he identified 336 North Main Street, Old Forge, as his residence address. (*Id.,* pp. 121, 125, 131; T.P. 1/23/04, pp. 13-14; Commonwealth's exhibit no. 3.)

The detectives transported the defendant to his North Main Street residence where he retrieved and produced additional drugs for the detectives. Specifically, the defendant retrieved 60 individual bags of heroin weighing four grams which were concealed in an open box of Uncle Ben's rice, and 26 grams of crack cocaine and 5.2 grams of cocaine hydrochloride which were hidden in a coffee filter. (T.P. 1/22/04, pp. 63-64, 116-17, 132; T.P. 1/23/04, pp. 14-15.) The 60 individual bags of heroin had identical labeling and markings as the heroin which had been purchased by the confidential informant in the Price Chopper parking lot. (T.P. 1/22/04, pp. 64, 133.) The heroin and cocaine seized from the defendant had a street value of $4,300. (*Id.,* p. 75.)

At the time of his arrest, the defendant was unemployed and had been paroled from jail 16 days earlier. (T.P. 1/22/04, p. 74.) When questioned by the detectives regarding any proceeds from the sale of drugs, the defendant escorted the detectives to his bedroom where he retrieved $1,092 in cash from his dresser drawer. (*Id.,* p. 64.) During their search, the detectives also discovered items of clothing which the defendant indicated belonged to him, thereby providing further evidence of his residency at that address. (*Id.,* pp. 73, 134-35.) Based upon the large

quantity of drugs seized and due to the absence of any paraphernalia customarily affiliated with the consumption, rather than the sale, of drugs, the defendant was charged with possession of controlled substances and possession with the intent to deliver. (*Id.,* pp. 66-68, 70, 74.)

Defendant was not charged with any drug delivery offenses in connection with his sale of 10 bags of heroin to the confidential informant in the Price Chopper parking lot. Defendant presented an in limine motion seeking to preclude any reference to this uncharged criminal activity pursuant to Pa.R.E. 404(b)(1). Since the Commonwealth was required to prove the defendant's intent to deliver in order to secure a PWID conviction, the Commonwealth sought to introduce evidence of the Price Chopper transaction under Pa.R.E. 404(b)(2) which states that "[e]vidence of other crimes, wrongs or acts may be admitted for other purposes, such as proof of . . . intent, preparation, plan, knowledge, identity or absence of mistake or accident." See also, *Commonwealth v. Passmore,* 857 A.2d 697, 711 (Pa. Super. 2004) (under Pa.R.E. 404(b), "[e]vidence of prior bad acts is also admissible where the particular crime or act was part of a chain, sequence, or natural development of events forming the history of a case."). In denying the defense motion, we found that: (1) the evidence was admissible under Rule 404(b)(2) as proof of intent; (2) the probative value of the evidence outweighed its potential for prejudice as per Rule 404(b) (3); and (3) the prosecution had provided the requisite notice of its intention to introduce the evidence at trial in compliance with Rule 404(b)(4). (T.P. 1/21/04, pp. 6-8, 15-19, 21-28.) Since a defendant is entitled to a limiting jury instruction prior to the admission of such evidence, see *Commonwealth v.*

*Hutchinson,* 571 Pa. 45, 54, 811 A.2d 556, 561-62 (2002), *cert. denied,* 540 U.S. 858 (2003), the jury was advised at trial that the challenged evidence was being offered only to prove the intent element of PWID and could not be considered "to show the character of the [defendant] or to show that he acted in conformity with that character." (T.P. 1/22/04, pp. 54-56.)

Prior to trial, the defendant indicated his intention to call Ms. Bassarath as a witness, and the court arranged for her transportation from prison to the courthouse. However, the defendant later opted not to call Ms. Bassarath and did not offer any evidence in his defense.[2] (T.P. 1/23/04, pp. 51-52, 58-72.) As stated above, the jury found the defendant guilty of three counts of PWID and three counts of possession. (*Id.,* pp. 152-53.) In his post-

2. Defendant had represented that if Ms. Bassarath were to be called as a witness, she would testify that the drugs seized did not belong to the defendant. Defense counsel expressed reservations regarding the proffered testimony of Ms. Bassarath since she had declined to speak to him prior to her testimony. (*Id.,* pp. 52-57.) In order to confirm on the record that the defendant agreed with his counsel's decision not to call Ms. Bassarath as a witness, and after Ms. Bassarath had consulted with her counsel, Ms. Bassarath answered the following questions from the court outside the presence of the jury:

"Q. And you know you've been sworn under oath to answer truthfully any questions that I pose to you. And the sole question that I have for you is, the drugs that were seized by the police in the house on June 20, 2003, were those drugs yours or were they Oscar Dargon's?

"A. He gave them to them. They were his.

"Q. They were Oscar Dargon's?

"A. Yes.

"Q. They were not your drugs?

"A. No." (*Id.,* p. 57.)

Based upon Ms. Bassarath's counseled testimony, the defendant concurred with his counsel's decision not to call her as a witness. (*Id.,* p. 65.)

trial motion, the defendant seeks a judgment of acquittal or a new trial on four bases. First, relying upon *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the defendant contends that Detective Mazzoni's reference to certain statements made by the confidential informant violated the defendant's rights under the Sixth Amendment's Confrontation Clause. (T.P. 12/27/04, pp. 27-39.) Second, the defendant asserts that newly discovered evidence which he has secured from Verizon and the McCann Business School establishes that he did not reside at 336 N. Main Street, Old Forge, as of the date of his arrest on June 20, 2003. (*Id.,* pp. 4-22.) Third, the defendant alleges that the consent to warrantless search form was actually executed after the 336 N. Main Street residence had already been searched by the detectives, and that the drugs and contraband seized during that search should have been suppressed as the fruits of an unlawful search. (*Id.,* pp. 46-48.) Last, the defendant submits that the evidence at trial was insufficient as a matter of law to support his convictions for PWID. (*Id.,* pp. 49-50.)

## III. DISCUSSION

### (A) *Statements by Confidential Informant*

During his testimony, Detective Mazzoni explained how a "controlled buy" of heroin was arranged based upon preliminary information that he had received from a non-testifying confidential informant. To that end, Detective Mazzoni testified that he was approached by the confidential informant "who stated a purchase of

heroin could be made from a black male by the name of 'Oc' or his live-in girlfriend by the name of Kay." Detective Mazzoni stated that the confidential informant "described 'Oc' or O.C. as a black male, bald head, five-foot-five to five-foot-four weighing about 130 pounds" who "was residing on Main Street in Old Forge at the intersection of Dunn Avenue" and "driving a brown car, brown Corsica, with Pennsylvania registration FTD . . . 3761." (T.P. 1/22/04, pp. 48-49.)

Prior to this testimony being offered, and in response to a hearsay objection lodged by defense counsel, the jury was provided with a cautionary instruction advising the jurors of the "very limited extent" to which they could consider such testimony. In the limiting instruction, the jury was cautioned that they were to consider "what the confidential informant allegedly said, not for the truth of the matter asserted, in other words, not to establish that the confidential informant did, in fact, say that, but only to explain why the officer upon receipt of that information then followed a certain course of conduct in connection with his investigation." (*Id.,* pp. 45-48.) The jury was twice admonished that it was to consider this particular testimony "only for that very limited purpose." (*Id.,* p. 48.) Furthermore, when Detective Mazzoni attempted to testify that the confidential informant had also stated that he had previously purchased heroin from the defendant, defense counsel's objection was sustained on the grounds that the testimony was being offered for the truth of the matter asserted. Additionally, the jury was instructed to disregard the proffered statement since it "was not part of the course of conduct" exception to the hearsay rule. (*Id.,* p. 50.)

Questions relating to the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. Boczkowski,* 577 Pa. 421, 451, 846 A.2d 75, 93 (2004). An abuse of discretion is not merely an error of judgment; discretion is abused when the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record. *Commonwealth v. Snyder,* 870 A.2d 336, 343 (Pa. Super. 2005). Hearsay is defined as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." *Commonwealth v. Gray,* 867 A.2d 560, 570 (Pa. Super. 2005). Hearsay testimony is inadmissible "except as provided in the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." *Commonwealth v. Dent,* 837 A.2d 571, 577 (Pa. Super. 2003), *app. denied,* 863 A.2d 1143 (Pa. 2004); *Commonwealth v. Cunningham,* 805 A.2d 566, 572 (Pa. Super. 2002), *app. denied,* 573 Pa. 663, 820 A.2d 703 (2003).

Statements made to police or law enforcement personnel which are not offered for the truth of the matter asserted may not constitute inadmissible hearsay. As the Superior Court of Pennsylvania has observed, "[c]ertain out-of-court statements offered to explain a course of conduct are admissible as an exception to the hearsay rule as these statements are not offered for the truth of the matters asserted; they are offered to show information upon which the police acted." *Commonwealth v.*

*Shotwell,* 717 A.2d 1039, 1042 (Pa. Super. 1998). Such statements are admissible under what is commonly referred to as the "course of conduct" exception to the hearsay rule. See *Commonwealth v. Ellis,* 700 A.2d 948, 960 (Pa. Super. 1997), *app. denied,* 556 Pa. 671, 727 A.2d 127 (1998) (detective permitted to testify regarding hearsay statement "to explain why he went to the hospital to speak with [defendant]"). Out-of-court statements of this nature are admissible pursuant to the course of conduct exception even if the statements are attributable to a nontestifying confidential informant. See *e.g., Commonwealth v. Collazo,* 440 Pa. Super. 13, 20-23, 654 A.2d 1174, 1177-79 (1995) (allowing police testimony that informant gave agreed-upon signal of consummated drug deal to explain why police moved in to apprehend and arrest defendant, where police officer testified from personal observation and court furnished cautionary instruction to jury); *Commonwealth v. Smith,* 250 Pa. Super. 436, 439, 378 A.2d 1015, 1017 (1977), *cert. denied,* 439 U.S. 835, 99 S.Ct. 118, 58 L.Ed.2d 131 (1978) (in bookmaking prosecution, testimony by trooper concerning statements made by informant to trooper to the effect that by calling a specific phone number the trooper could place bets, was not inadmissible hearsay); *Commonwealth v. Tselepis,* 198 Pa. Super. 449, 452, 181 A.2d 710, 712 (1962) (officer's testimony about informant's tip that defendant was conducting a lottery was admissible as "evidence as to the reason action is taken" by police). Instantly, the statements ascribed to the confidential informant were admitted into evidence, subject to a cautionary instruction, solely to explain why the detectives conducted surveillance of 336 N. Main

Street and arranged for a controlled buy of drugs at a nearby Price Chopper parking lot.

Defendant contends that the admission of this "course of conduct" testimony was prejudicial error in light of the recent Supreme Court ruling in *Crawford v. Washington*. In *Crawford,* the Supreme Court partially abrogated its earlier decision in *Ohio v. Roberts,* 448 U.S. 56 (1980), and announced a new rule of law that substantially altered Sixth Amendment jurisprudence. Since the *Crawford* decision was issued more than one month after the defendant's trial, it must first be determined whether the defendant may benefit from *Crawford.* In order for a new rule of law to apply retroactively to a case which has already been tried to verdict, the defendant must preserve the relevant issue by asserting a timely and specific objection to the introduction of the challenged evidence. *Gray,* 867 A.2d at 574 (finding that *Crawford* had been preserved by timely objections to the Commonwealth's introduction of out-of-court statements). Our review of the record reveals that, prior to the commencement of jury selection, defense counsel asserted a continuing objection to the Commonwealth's introduction of statements made by the confidential informant on the basis of the defendant's "right to confront his accusers" and his lack of "an opportunity to confront the person that allegedly made the statements." (T.P. 1/21/04, pp. 19, 28-30.) Therefore, defense counsel properly preserved the defendant's Confrontation Clause rights such that *Crawford* may be considered as a possible basis for a new trial in this case. See *Gray, supra.*

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Roberts* held that an unavailable witness' out-of-court statement was admissible as long as it had adequate indicia of reliability, *i.e.,* it fell within a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." *Roberts,* 448 U.S. at 66. The *Crawford* court concluded that "[t]his malleable standard often fails to protect against paradigmatic confrontation violations." *Crawford,* 124 S.Ct. at 1369. Reasoning that the Confrontation Clause's ultimate goal of ensuring reliability "is a procedural rather than a substantive guarantee," *Crawford* concluded "that reliability [must] be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 1370. In so holding, the Supreme Court remarked:

"Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes." *Id.* at 1371.

Thus, the *Crawford* court concluded that testimonial statements of absent witnesses are admissible only where (1) the declarant is unavailable and (2) the defendant has had a prior opportunity for cross-examination.[3] *Id.* at

---

3. Although the *Crawford* court stated that it would "leave for another day any effort to spell out a comprehensive definition of 'testimonial'," *id.* at 1374, it found that statements taken by police officers in the course of interrogations are testimonial in that a person who furnishes a formal statement to government officers "bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* at 1364. For purposes of the defendant's post-trial mo-

1374. See also, *Commonwealth v. Gribble,* 863 A.2d 455, 464 n.7 (Pa. 2004); *Commonwealth v. Brown,* 853 A.2d 1029, 1034 (Pa. Super. 2004).

In his post-trial brief, the defendant maintains that Detective Mazzoni's references to the confidential informant's statements violated the defendant's confrontation rights under *Crawford* and thereby warrant a new trial in this matter. (Dkt. entry no. 94, pp. 4-7.) Although the Commonwealth's opposing brief does not address *Crawford* or the defendant's Confrontation Clause arguments (*id.,* no. 97), the Commonwealth alleged at the time of oral argument that *Crawford* is inapplicable because the defendant was not charged with drug delivery offenses related to the Price Chopper parking lot transaction. (T.P. 12/27/04, pp. 43-45.) The Commonwealth's argument overlooks the fact that the Commonwealth affirmatively offered evidence of the Price Chopper parking lot transaction under Pa.R.E. 404(b)(2) in an effort to establish the intent element for the defendant's PWID charges. (T.P. 1/21/04, pp. 6-8, 15-19, 21-28; T.P. 1/22/04, pp. 45-48, 54-56.) Hence, the Commonwealth's use of this incriminating evidence implicated the defendant's right under the Confrontation Clause to confront any witnesses against him.

Nevertheless, *Crawford* does not entitle the defendant to a new trial since Detective Mazzoni was subject to extensive cross-examination regarding the confidential informant's reliability and his purported statements which were admitted into evidence for a limited purpose. (T.P.

tion, we will assume arguendo, albeit without expressly deciding, that the confidential informant's statements to Detective Mazzoni constitute testimonial statements or evidence.

1/22/04, pp. 90-106, 110-13.) "*Crawford* does not apply where the *reliability* of testimonial evidence is not at issue, and a defendant's right of confrontation may be satisfied even though the declarant does not testify." *United States v. Trala,* 386 F.3d 536, 544 (3d Cir. 2004). (emphasis in original) In *Trala,* a police officer was permitted to testify regarding statements made by a non-testifying declarant in an attempt to establish the defendant's consciousness of guilt. Finding that the defendant's "rights under the Confrontation Clause were satisfied," the United States Court of Appeals for the Third Circuit noted that the police officer "was available for cross-examination, so defense counsel therefore had an opportunity to question her account of the conversation with [the non-testifying declarant]." *Id.* at 545. Under the circumstances, the defendant's confrontation rights under *Crawford* were deemed not to have been violated.[4] *Id.* at 545. Accord, *U.S. v. Hendricks,* 395 F.3d 173, 183 (3d Cir. 2005) (citing *Trala* for the proposition that the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted).

Even if the testimony in dispute was inadmissible under *Crawford,* any resulting error was harmless. See *Passmore,* 857 A.2d at 711 ("The harmless error doc-

---

4. Although the *Trala* court suggested that the use of a cautionary instruction would further protect the defendant's confrontation rights, *id.* at 544 (citing *Tennessee v. Street,* 471 U.S. 409, 411-12 (1985)), it noted that the trial court had not furnished such an instruction. *Id.* at 544-45. In the case at bar, the defendant did benefit from a limiting instruction advising the jury not to consider the truthfulness of the confidential informant's statements since they were being offered for the sole purpose of explaining the detectives' course of conduct.

trine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial."). The confidential informant's statements were merely cumulative of other untainted evidence which established the defendant's guilt beyond a reasonable doubt. According to Detective Mazzoni's unchallenged testimony, the defendant admitted that the heroin and cocaine seized on June 20, 2003, belonged to the defendant. The volume and packaging of the drugs seized, the absence of any drug consumption paraphernalia and the presence of the serialized "buy money" in the seat where the defendant last sat, furnished more than enough evidence to overwhelmingly establish the defendant's guilt. As a result, there is no reasonable possibility that the alleged error could have contributed to the verdict, and the defendant is not entitled to a new trial on that basis. *Gray*, 867 A.2d at 571-72; *Passmore, supra.*

## (B) *Newly Discovered Evidence*

Defendant next contends that, subsequent to his trial, he secured documentation from Verizon and the McCann Business School reflecting that he resided at 114 North Rebecca Avenue, Scranton, at the time of his arrest, such that the drugs seized at 336 North Main Street, Old Forge, could not have belonged to him. In order to secure a new trial on the basis of newly or after-discovered evidence, the defendant must prove by a preponderance of the evidence that: (1) the evidence has been discovered after trial and could not have been obtained prior to the conclusion of trial by the exercise of due diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for impeachment

purposes; and (4) the evidence is of such a nature and character that a different verdict will likely result if a new trial is granted. *Commonwealth v. Figueroa,* 859 A.2d 793, 799 (Pa. Super. 2004); *Commonwealth v. Bormack,* 827 A.2d 503, 506 (Pa. Super. 2003), *app. denied,* 577 Pa. 693, 845 A.2d 816 (2004).

During the post-trial hearing on December 27, 2004, the defendant produced a bill from Verizon dated February 10, 2003. The Verizon bill merely demonstrates that telephone service at the North Rebecca Avenue address was discontinued on January 28, 2003. The Verizon exhibit does not reflect the status of any telephone service at 114 North Rebecca Avenue, Scranton, as of the date of the defendant's arrest almost five months later on June 20, 2003, nor is it otherwise probative of the defendant's residence on that date. (T.P. 12/27/04, pp. 10-12, 16-19; defendant's post-trial exhibit no. 1.) In fact, the defendant conceded that, to his knowledge, there was no phone number for the North Rebecca Avenue address at the time of his arrest. (*Id.,* p. 20.) As a consequence, the documentation obtained from Verizon is not of such a nature and character that a different verdict would likely result if this exhibit was introduced into evidence during a new trial.

Defendant claims that an application that he allegedly completed for the McCann Business School on June 5, 2003, similarly indicates his residence as 114 North Rebecca Avenue rather than 336 North Main Street. (T.P. 12/27/04, pp. 20-21.) However, the relevant inquiry at the time of trial was the defendant's residence as of June 20, 2003. The testimony established that Karlene Bassarath had resided at 114 North Rebecca Avenue, but had

relocated with the defendant to 336 North Main Street by the time of his arrest. (T.P. 1/22/04, pp. 81, 109, 122.) Defendant himself admitted to the detectives on the date of his arrest that he was residing at 336 North Main Street. (*Id.,* pp. 60-63, 79-81, 118-19, 122, 131.) Even the consent to search form signed by the defendant identifies his address as 336 North Main Street. (*Id.,* pp. 121, 125, 131.)

Therefore, the documentation obtained from the McCann Business School is not of such a nature and character that a different verdict would likely result if it was admitted into evidence at a second trial. Moreover, the defendant has not articulated any legitimate reason why the Verizon and McCann Business School documents could not have been secured prior to his trial. Based upon the evidence presented during the post-trial hearing, the defendant has not demonstrated his right to a new trial on the basis of newly or after-discovered evidence. See *Commonwealth v. Wright,* 832 A.2d 1104, 1108 (Pa. Super. 2003).

### (C) *Validity of Consent To Search*

Defendant also contends that his convictions should be set aside since "the evidence is irrefutable that the Commonwealth executed a consent to search only after the search was executed." (Dkt. entry no. 94, p. 9.) During the trial, Detective Mazzoni testified that the consent to search form reflected the incorrect military time due to an apparent clerical error. Detective Mazzoni testified unequivocally that the consent to search form was unquestionably signed prior to the search being conducted. (T.P. 1/22/04, pp. 86-89, 125; T.P. 1/23/04, pp. 34-35, 37.) As the finder of fact, the jury was free to

believe and accept Detective Mazzoni's testimony regarding the temporal discrepancy indicated on the consent form, *Snyder,* 870 A.2d at 350, and the defendant is not entitled to a judgment of acquittal or a new trial on this basis. (T.P. 12/27/04, p. 48.)

### (D) *Sufficiency of Evidence*

Finally, the defendant asserts that "the evidence was insufficient to establish possession with intent to deliver and [he] requests that the court dismiss the charges against him." (Dkt. entry no. 94, p. 10.) When reviewing a sufficiency of the evidence claim, the court must view all of the evidence and all reasonable inferences arising therefrom in the light most favorable to the Commonwealth as the verdict winner in order to determine whether the evidence was sufficient to enable the fact-finder to conclude that all of the elements of the offenses charged were established beyond a reasonable doubt. *Commonwealth v. Roney,* 866 A.2d 351, 356 (Pa. 2005). In making that determination, it is not the responsibility of the court "to judge a witness' credibility, resolve conflicts in testimony, or weigh the evidence; these important tasks are left to the fact-finder." *Commonwealth v. Payne,* 868 A.2d 1257, 1260 (Pa. Super. 2005). While passing on the credibility of witnesses and the weight of the evidence produced, the trier of fact is free to believe all, part or none of the evidence. *Commonwealth v. Barnes,* 871 A.2d 812, 819 (Pa. Super. 2005).

The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. *Snyder,* 870 A.2d at 350. "Any doubts regarding a defendant's guilt may be resolved by the fact-finder un-

less the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Barnes, supra* (quoting *Commonwealth v. DiStefano,* 782 A.2d 574, 582 (Pa. Super. 2001), *app. denied,* 569 Pa. 716, 806 A.2d 858 (2002)). Thus, the court must simply determine "whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Payne, supra* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). (emphasis in original)

To uphold a conviction for PWID, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it. *Commonwealth v. Burkett,* 830 A.2d 1034, 1038 (Pa. Super. 2003). If the drugs are not found on the defendant's person and [s]he was not in actual possession of them, the Commonwealth must demonstrate constructive possession of the drugs through "proof of the ability to exercise conscious dominion over the substance, the power to control the contraband and the intent to exercise such control." *Commonwealth v. Petteway,* 847 A.2d 713, 716 (Pa. Super. 2004). The intent to exercise conscious dominion may be inferred from the totality of the circumstances, *Commonwealth v. Kirkland,* 831 A.2d 607, 610 (Pa. Super. 2003), *app. denied,* 577 Pa. 705, 847 A.2d 1280 (2004), and circumstantial evidence may be used to establish a defendant's possession of drugs. *Commonwealth v. Jackson,* 540 Pa. 556, 560-61, 659 A.2d 549, 551 (1995); *Commonwealth v. McCoy,* no. 03 CR 1178, Nealon, J., at p. 10 (Lacka. Cty. August 13, 2004), *aff'd,* 869 A.2d 10 (Pa. Super. 2004), *reargument denied,* (Feb. 9, 2005). The trier of fact may infer that the defendant intended to deliver a

controlled substance based upon the facts and circumstances surrounding the case, such as the amount of the drug seized, the form of the drug, the particular method of packaging the drug, and the behavior of the defendant. *Kirkland,* 831 A.2d at 611; *Commonwealth v. Drummond,* 775 A.2d 849, 854 (Pa. Super. 2001), *app. denied,* 567 Pa. 756, 790 A.2d 1013 (2001).

In the case at hand, the evidence introduced by the Commonwealth established the defendant's actual or constructive possession of 60 individual bags of heroin, 26 grams of crack cocaine and 5.2 grams of cocaine hydrochloride. The testimony also proved the absence of any paraphernalia associated with drug consumption and the presence of the serialized "buy money" in the car seat that was last occupied by the defendant. When coupled with an unemployed ex-convict's possession of $1,092 in cash, the direct and circumstantial evidence was more than sufficient to support the defendant's PWID conviction. See *e.g., Commonwealth v. Conaway,* 791 A.2d 359, 363 (Pa. Super. 2002) (evidence was sufficient to sustain PWID conviction since 60 baggies of crack cocaine were found in an apartment rented by the defendant and the police found no drug paraphernalia indicative of personal use); *Commonwealth v. Torres,* 421 Pa. Super. 233, 238, 617 A.2d 812, 814 (1992), *app. denied,* 535 Pa. 618, 629 A.2d 1379 (1993) (evidence was sufficient to support PWID conviction where defendant possessed 4.63 grams of cocaine in 17 individual packets, $236 in currency, and the arresting officer did not discover any drug paraphernalia commonly associated with consumption of cocaine). Although the defendant contends that it was improper for the narcotics detective to provide an opinion as to whether the drugs were in-

tended for delivery as opposed to personal use (see dkt. entry no. 94, p. 12), Pa.R.E. 704 clearly permits such a duly qualified narcotics expert to express an opinion concerning a defendant's intent to distribute drugs. See *Commonwealth v. Johnson,* 782 A.2d 1040, 1041 n.1 (Pa. Super. 2001) (declining to follow *U.S. v. Watson,* 260 F.3d 301, 310 (3d Cir. 2001)); *Commonwealth v. Kelly,* 103 Lacka. Jur. 1, 7-8 (2001) (same). Accordingly, the defendant's sufficiency of the evidence challenge does not entitle him to post-trial relief in this matter.

## ORDER

And now, March 11, 2005, upon consideration of the post-sentence motion of defendant Oscar Dargon, the memoranda of law submitted by the parties, and the evidence and arguments offered during the hearing on December 27, 2004, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that the post-sentence motion of defendant Oscar Dargon is denied.