J-S17020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYWANN RAHEEM WINDHAM | : | |
| | : | |
| Appellant | : | No. 864 WDA 2022 |

Appeal from the Judgment of Sentence Entered March 3, 2022
In the Court of Common Pleas of Butler County Criminal Division at
No(s):  CP-10-CR-0000512-2020

BEFORE:  LAZARUS, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.:                    **FILED: OCTOBER 3, 2023**

Appellant, Tywann Raheem Windham, appeals from the judgment of sentence entered on March 3, 2022, as made final by the denial of Appellant's post-sentence motion on July 8, 2022.  We affirm.

On March 4, 2020, City of Butler Police Officer Ryan Doctor applied for a warrant to search the single-family residence that Appellant shared with his girlfriend, Kari Lee Summerville.  Within the affidavit of probable cause, Officer Doctor averred:

> Your affiant is employed as a police officer for the City of Butler Police Department and has been since September of 2018.  . . . During the course of my career . . . , I have been involved in investigations of violations of the Drug, Device, and Cosmetics Act in excess of 50 occasions.  I also attended drug interdiction training in September of 2019.  . . . I have personally participated in three search warrants on behalf of the Butler County Drug Task Force, and I have assisted on approximately 10 controlled buys.

In the later days of January 2020, I did interview a confidential informant that, for the purpose of this affidavit, will be referred to as CI 1. CI 1 told me about illegal drug sales occurring at 507 Virginia Avenue in Butler City. CI 1 identified the residence as belonging to Kari Summerville and [Appellant]. CI 1 also advised that [Appellant] sells large amounts of heroin out of the residence, and also advised that Kari Summerville sells crack cocaine out of the residence. I did verify through PennDOT records that Summerville and [Appellant] have both listed 507 Virginia Avenue as the address on their respective driver's licenses. The Butler County Drug Task Force and Butler City Police are familiar with both [Appellant] and Summerville from prior drug investigations. I also checked the criminal histories for both and found that Summerville has one felony drug conviction and [Appellant] has two felony drug convictions. At a later date, CI 1 was shown JNET photographs of both [Appellant] and Summerville and positively identified both.

In the early days of February 2020, a controlled purchase of heroin was made from [Appellant] at 507 Virginia Avenue utilizing CI 1. CI 1 and CI 1's vehicle were both searched prior to and immediately following the buy and found to be free of controlled substances, money, weapons, or other contraband. At my direction, CI 1 contacted [Appellant at a particular telephone number] and requested to come to the aforementioned residence to purchase heroin. [Appellant] agreed. CI 1 was provided with pre-recorded official funds. CI 1 was followed by law enforcement to the area of [Appellant's] residence and was observed entering 507 Virginia Avenue via the front door. CI 1 was observed exiting the same door minutes later and was followed back to an undisclosed location by law enforcement. At that undisclosed location, CI 1 did turn over suspected heroin to law enforcement. CI 1 stated that they purchased the suspected heroin from [Appellant] for the pre-recorded funds. The suspected heroin was not field tested for officer safety and was sent to the Pennsylvania State Police lab for further analysis. CI 1 advised that during the course of the controlled buy, they did witness a handgun near [Appellant].

[On February 25, 2020, Appellant] contacted Butler City Police to report his child missing from his residence at 507 Virginia Avenue.

- 2 -

[At approximately 4:00 a.m. on March 3, 2020,] Butler City Police Officers Kory Fleming and Mike Sulerud conducted a trash pull at 507 Virginia Avenue. There were two black trash bags set out for pick-up on the sidewalk directly in front of the residence. Both of those bags were seized and were transported to the Butler City Police Station. Myself and Officer Sulerud did open the bags and examine the contents. Inside the bags, we located items of indicia for Kari Summerville. There was a bill from Pioneer Credit Recovery, Inc. with a notice to debit account for $5.00 on behalf of the U.S. Department of Education. This was addressed to Kari Summerville at 507 Virginia Avenue. There was also a "Gerber Life Insurance" letter addressed to Kari Summerville at 507 Virginia Avenue. Coupled with these documents, a "netspend" debit card in Kari Summerville's name was located on one of the bags.

I also located six clear plastic bags, one of which with the corner torn off. Crack cocaine is frequently sold in this area in plastic bag corners. The corner missing from this bag indicates that this bag may have been used to package crack cocaine. There were also eight small green ziplock bags, three of which contained what appeared to be a small amount of suspected crack cocaine. The contents of one of these bags was field tested, and it tested positive for cocaine.

Based on the facts presented in this affidavit, it establishes probable cause that heroin and crack cocaine are being sold from 507 Virginia Avenue in Butler, PA. As such, I request that this warrant be granted so that the residence and persons listed can be searched in furtherance of this investigation.

Affidavit of Probable Cause, 3/4/20, at 1-2.

The search warrant was issued and, on March 5, 2020, detectives from the Butler County Drug Task Force and police officers from the Butler County Emergency Services Unit executed the warrant. During the execution of the warrant, the officers discovered:

- 3 -

443 stamp bags of suspected heroin, [nine] individually-packaged bags of crack cocaine, approximately 65 grams of marijuana, 37 chewable MDMA tablets, a plastic baggie containing 101 alprazolam pills, $914.00 in U.S. currency, [four] cellular phones, [two] digital scales, and an abundance of narcotics packaging materials.

Affidavit of Probable Cause, 3/5/20, at 1. Further, "[t]he above mentioned items were located throughout the residence in areas accessible to both [Ms. Summerville and Appellant], and indicia of ownership was located for both individuals within the residence." *Id.*

Following his arrest, Appellant filed a pre-trial motion and claimed that all evidence recovered from the search must be suppressed, as the affidavit in support of probable cause for the issuance of the search warrant provided "an insufficient basis for probable cause." Appellant's Pre-Trial Motion, 8/31/20, at 2.

The trial court denied Appellant's pre-trial motion on December 16, 2020 and the case was later scheduled for trial. Prior to trial, the Commonwealth filed notice, pursuant to Pennsylvania Rule of Evidence 404(b), that it intended to introduce evidence Appellant sold heroin to the confidential informant ("CI"), from the 507 Virginia Avenue residence, in early February 2020. Commonwealth's Rule 404(b) Notice, 7/1/21, at 1. According to the Commonwealth, while this evidence was not admissible to "prove [Appellant's] character in order to show that on a particular occasion [he] acted in accordance with the character," it was admissible to prove Appellant's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.*; *see also* Pa.R.E. 404(b)(1) and (2).

- 4 -

In response, Appellant filed a motion *in limine*, where he sought to exclude evidence of this uncharged heroin sale. Appellant claimed that the evidence was inadmissible, as the probative value of the evidence did not outweigh its potential for unfair prejudice and there was no evidence that Appellant actually committed the uncharged crime. *See* Appellant's Motion *in Limine*, 8/2/21, at 2-4. The trial court denied Appellant's motion and the case proceeded to a jury trial in January 2022.

During trial, Officer Doctor testified that he is employed by the Butler City Police Department and a member of the Butler County Drug Task Force. As Officer Doctor testified, he began watching Appellant's house at 507 Virginia Avenue in January 2020 and was able to "see typically a lot of times later at night a lot of foot traffic in and out of the residence, pedestrian traffic for short periods of time. Five, ten minutes tops." N.T. Trial, 1/24/22, at 41.

Officer Doctor testified that he then used a CI to perform a controlled buy of heroin from 507 Virginia Avenue. *Id.* at 43. Specifically, Officer Doctor testified:

> A: So, the CI provided us with a phone number which they were able to contact [Appellant]. And that was the number that we used to contact [Appellant] at the time.
>
> . . .
>
> Q: Did you [perform a typical controlled purchase of narcotics] with the CI at – with regard to setting up purchase with 507 Virginia Avenue, [Appellant's] . . . and Miss Summerville's residence?
>
> A: Yes.

Q: Okay. Did you observe that confidential informant go into that house?

A: Yes.

Q: Okay. And who did that confidential informant exit that house with?

A: [Appellant]. . . .

Q: Okay. How much money did you send them in with?

A: $400.

Q: Okay. What did they bring back to you?

A: Two bricks [of heroin]. Which would typically [be 100] stamp bags. We did a count there it ended up being only 99.

Q: Okay. Were they in a specifically marked baggie?

A: Yes. They were in a – it's a white glassine baggie with red lips on it that said Kiss Me.

*Id.* at 45-46.

Officer Doctor testified that both Appellant and Ms. Summerville were present in the house during the March 5, 2020 residence search. He testified that the search of the residence revealed a large quantity of heroin in the master bedroom and that crack cocaine, other controlled substances, packaging materials, and weighing equipment were found throughout the home. *See id.* at 54-82. According to Officer Doctor, the street value of the heroin and crack cocaine found in the house was approximately $4,000.00. *Id.* at 78.

Ms. Summerville testified that Appellant's primary source of income was "[s]elling drugs" and that Appellant took in approximately $6,000.00 to $10,000.00 per day in revenue, primarily from the sale of crack cocaine and heroin. N.T. Trial, 1/25/22, at 19, 26, and 29. She testified that, while she helped Appellant sell the crack cocaine, Appellant was, essentially, solely responsible for selling the heroin. *Id.* at 23-26.

The jury found Appellant guilty of three counts of possessing a controlled substance with the intent to deliver ("PWID") and one count each of possession of drug paraphernalia, possession of a controlled substance, and criminal conspiracy.[1] On March 3, 2022, the trial court sentenced Appellant to serve an aggregate term of 102 to 204 months in prison for his convictions. N.T. Sentencing, 3/3/22, at 4-5.

Following the denial of Appellant's post-sentence motion, Appellant filed a timely notice of appeal. Appellant raises two claims to this Court:

> [1.] Did the trial court err by denying [Appellant's] omnibus pretrial motion, which sought the suppression of evidence discovered from the execution of a search warrant on March 5, 2020, on the grounds that the search warrant was not supported by probable cause?
>
> [2.] Did the trial court err by denying [Appellant's] motion *in limine* to exclude both testimony and evidence (*i.e.*, photographs of items purportedly recovered from the controlled purchase) which insinuated (but did not establish) [Appellant's] participation in a controlled purchase of heroin

---

[1] 35 P.S. §§ 780-113(a)(30), (32), and (16) and 18 Pa.C.S.A. § 903(a)(1), respectively.

in early February 2020, approximately one month prior to the execution of the search warrant which gave rise to the instant charges, and with which [Appellant] was never charged?

Appellant's Brief at 3 (some capitalization omitted).

We have reviewed the briefs of the parties, the relevant law, the certified record, and the opinions of the able trial court judge, the Honorable Timothy F. McCune. We conclude that Appellant is not entitled to relief in this case, for the reasons expressed in Judge McCune's December 16, 2020 and September 23, 2022 opinions. Therefore, we affirm on the basis of Judge McCune's opinions and adopt them as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach copies of Judge McCune's December 16, 2020 and September 23, 2022 opinions.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/3/2023

IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA          :

v.                                    :          CP-10-CR-0000512-2020

TYWANN RAHEEM WINDHAM,                 :
    Defendant.

For the Commonwealth:     Richard A. Goldinger, Esq., D.A.
For the Defendant:        Stephanie M. Noel, Esq.                    September __, 2022

## 1925(a) OPINION

Defendant Tywann Raheem Windham has appealed the Judgment of Sentence of March 3, 2022, which became final on July 11, 2022 by operation of law. Defendant filed a timely Notice of Appeal on July 28, 2022 and a Concise Statement of Errors Complained of on Appeal on August 26, 2022.

Defendant raises the following four (4) issues on appeal:

1. The trial court erred by denying Mr. Windham's Omnibus Pretrial Motion which sought the suppression of evidence discovered from the execution of a search warrant on March 5, 2020, on the grounds that the search warrant was not supported by probable cause.
2. The trial court erred by denying Mr. Windham's Motions in *Limine* to exclude both testimony and evidence (i.e., photographs of items purportedly recovered from the controlled purchase) which insinuated (but did not establish) Mr. Windham's participation in a controlled purchase of heroin in early February 2020 – an event that allegedly took place approximately one month prior to the execution of the search warrant and with which Mr. Windham was never charged.
3. The evidence is insufficient as a matter of law to sustain Mr. Windham's conviction at Count 2 of the Amended Criminal Information filed January 24, 2020 for Possession With Intent to Deliver ("PWID") "substituted Cathinone and Eutylone" where the Commonwealth failed to prove beyond a reasonable doubt that Mr. Windham possessed this controlled substance with the intent to deliver it, rather than for personal use.
4. The evidence is insufficient as a matter of law to sustain Mr. Windham's convictions at Counts 1 (PWID – Heroin and Fentanyl); 2 (PWID – substituted Cathinone and Eutylone); 3 (PWID – Cocaine); 4 (Criminal Conspiracy to Commit PWID); 5 (Possession of Drug Paraphernalia) and 6 (Possession of a Controlled Substance – Marijuana) on a theory of constructive possession

1

and/or joint constructive possession. The Commonwealth failed to prove beyond a reasonable doubt that Mr. Windham intended to exercise conscious dominion and control over any of the particular controlled substances recovered during the execution of the search warrant. Further, the Commonwealth failed to prove beyond a reasonable doubt that Mr. Windham possessed the controlled substances during the course of a conspiracy with Keri Summerville and in furtherance of the goals of the conspiracy.

In response to Issue No. 1, this court submits the Memorandum Opinion and Order of Court of December 11, 2020 and docketed on December 16, 2020. The issue is without merit and is fully addressed by the opinion.

In response to Issue No. 2, this court submits the Order of Court of August 11, 2021 and docketed on August 16, 2021. On July 1, 2021, the Commonwealth filed Notice Pursuant to Rule 404(B) of the Pennsylvania Rules of Evidence of its "intention to introduce at trial the additional following crimes, wrongs or acts for purposes of proof of **motive, intent**, preparation, plan, knowledge, identity or absence of mistake or accident:

1. The Defendant was contacted in late January 2020 and early February 2020 via a number known to reach Tywann Windham being 724-332-1784 to schedule illegal drug purchases of heroin from Tywann Windham at his residence being 507 Virginia Avenue, Butler, PA. Said purchases did take place. A trash pull was then conducted at 507 Virginia Avenue, Butler, PA on March 3, 2020. Those trash bags contained indicia of residency from 507 Virginia Avenue and contained drug dealing and packaging materials consistent with the illegal drug trade. It was further confirmed that as late as February 25, 2021 Tywann Windham confirmed that his residence was 507 Virginia Avenue, Butler, PA as he contacted the police to report his missing child or make a missing child report and confirmed that he."

Defendant's Motion in Limine, filed on August 2, 2021, at paragraphs numbered 21. and 22., provides that "On July 8, 2021, Undersigned Counsel received a letter from the Commonwealth to offer further 'clarification' to this usage of Rule 404(b) evidence. Such letter provides that: 'Detective Doctor did witness your client walking with the confidential informant out of the residence at 507 Virginia Avenue after completion of the drug transaction with the confidential informant referenced in the June 30, 2021 404(b) notice."

This issue is meritless. At hearing on the Motion in Limine on August 10, 2021, the Commonwealth argued that Defendant was under surveillance from the beginning of 2020. Officer Doctor was the lead investigator on this case and he made contact with Defendant using a phone number known to be able to reach Defendant. Controlled purchases of illegal drugs were set up using a confidential informant. Officer Doctor watched the informant enter 507 Virginia Avenue and exit with Defendant. The informant purchased white stamp bags marked with red lips and the words KISS ME. When the search warrant was executed, Officers Doctor and Hovancik found a box of red lipped KISS ME stamp bags in Defendant's bedroom at 507 Virginia Avenue. *N.T., Motion in Limine*, August 10, 2021, pgs. 14-17.

At hearing, this court stated, "this is all certainly part of the Commonwealth's prerogative as to what evidence they wish to present. And it's all subject to cross-examination and argument on your point. I think Mr. Simon's [A.D.A.] right. They don't have to present their case in a vacuum. They're entitled to put background information in." *Id.* at 17.

2

Defendant also attempted to exclude photographs provided to the defense prior to trial of various illegal drugs, specifically photographs of red-lipped KISS ME stamp bags that were recovered from a controlled purchase in late January or early February 2020 at 507 Virginia Avenue. Stamp bags with the same marking and wording were discovered on March 5, 2020 during the search warrant execution at the same location. The Commonwealth argued that the photographs were relevant to the whole overview of the investigation and showed stamp bags with unique and specific markings and wording. This court denied Defendant's request and believes that the photographs were "relevant under the res gestae or complete story evidence that the Commonwealth is permitted to submit." *Order of Court of August 11, 2021*, docketed on August 16, 2021, pg. 3. The court determined that the evidence sought to be excluded was of a probative value that outweighed any prejudicial value to Defendant.

In response to Issue No. 3, Count 2 of the Amended Information filed on January 24, 2022, states the following: "Count 2 – Manufacture, Deliver, or Possess With Intent to Manufacture or Deliver in that, on or about said date [March 5, 2020], the actor, not being registered under the Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972, nor a practitioner registered or licensed by the appropriate State Board, did manufacture, possess with intent to deliver substituted Cathinone and Eutylone, a Schedule I controlled substance in violation of Section 113(a)(30) of the Controlled Substance, Drug, Device and Cosmetic Act. (35 P.S. 780-113(a)(30)).

"The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence."

*Commonwealth v. Mack*, 850 A.2d 690, 693 (Pa.Super.2004).

At trial, the Commonwealth submitted photographs taken by Officer Doctor on March 5, 2020 of the illegal drugs that were recovered pursuant to the search warrant execution at the 507 Virginia Avenue residence. Commonwealth's Exhibit "18" is a close-up photograph of a purple zipper pouch that was located on a nightstand next to the left-hand side of the bed, which was determined to be Defendant's side of the bed in the master bedroom. The photograph shows what was contained inside the pouch, including several zip lock green baggies with crack cocaine, a bundle of heroin and numerous tablets of cathinone. *N.T., Jury Trial on January 24, 2022*, pg. 61. Commonwealth's Exhibit "20" is a photograph of one of the drawers of the above-mentioned nightstand, pulled out, that shows numerous packaging materials, zip lock bags, clear and green baggies. *Id.* Commonwealth's Exhibit "33" is a photograph of "nine [9] small zip lock red baggies with the shoe shaped tablets that returned from the lab as cathinone." *Id.* at 62. Inside the zippered purple pouch, "there were numerous crack cocaine

3

baggies and nine of the individually packaged baggies of tablets of cathinone were in the top part of the pouch in addition to one bundle of heroin." *Id.* at 65. Additionally, $885 in cash was located in the bottom drawer of the nightstand/dresser to the left of the bed. *Id.* at 66.

In addition, at trial, there was direct testimony from witness Kari Summerville Windham who testified that "he [Defendant] would buy ecstasy all the time because he had a problem with it. I don't know truly if he sold any. I'm sure he did. But he for the most part took the ecstasy himself." *N.T., Jury Trial on January 25, 2022,* pg. 21.

This issue is meritless. Based upon the above testimony and exhibits and the entire record, it is clear that the trier of fact could undoubtedly reach the conclusion that indeed Defendant was guilty of Count 2.

Lastly, in response to Issue No. 4, Defendant claims that the evidence is insufficient to sustain Defendant's convictions on the theory of constructive possession, which "is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances." *Commonwealth v. Brown,* 48 A.3d 426, 430 (Pa.Super.2012), *appeal denied,* 63 A.3d 1243 (2013). Additionally, it is possible for two people to have joint constructive possession of an item of contraband. *Commonwealth v. Sanes,* 955 A.2d 369, 373 (Pa.Super.2008)."

*Commonwealth v. Hopkins,* 67 A.3d 817, 820 (Pa.Super.2013).

"Furthermore, constructive possession may be proven where the item in issue is in an area of joint control and equal access. *Commonwealth v. Mudrick,* 510 Pa. 305, 307, 507 A.2d 1212, 1213 (1986) (jury could find constructive possession where contraband was found in an area where defendant and his paramour had joint control and equal access). *Commonwealth v. Macolino,* 503 Pa. 201, 208, 469 A.2d 132, 135 (1983)."

*Commonwealth v. Jackson,* 540 Pa. 556, 561, 659 A.2d 549, 551 (1995).

This issue is meritless. A review of the evidence presented at trial and in the light most favorable to the Commonwealth, shows that upon execution of the search warrant of 507 Virginia Avenue, the police encountered Defendant and his paramour at that time, Kari Summerville Windham, who is also the lessee. Illegal drugs, digital scales, cash, and packaging materials were found in the 2-story residence where both resided, primarily in the master bedroom shared by the two, the dining room and the living room.

The jury as the fact-finder could reasonably conclude that Defendant had knowledge of the locations in the house where the illegal drugs, packaging materials, cash and all other paraphernalia were stored. In fact, Kari Summerville Windham, testified that Defendant directed her involvement in this illegal activity. Clearly, it was reasonable for the jury to have concluded that Defendant exercised a conscious dominion and control over the contraband sufficient to sustain his convictions on the theory of constructive possession for criminal conspiracy.

4

In conclusion, this court conducted a comprehensive inquiry in this matter and a review of the record and testimony will show no abuse of discretion or error of law. Based upon the foregoing reasons, it is respectfully requested that the Order of Court of March 3, 2022, which became final on July 11, 2022 by operation of law, be affirmed.

Respectfully submitted,

Timothy F. McCune, Judge

LISA WELLAND LUTZ
CLERK OF COURTS
ENTERED AND FILED
2022 SEP 23  AM 11: 24
BUTLER COUNTY
COURT OF COMMON PLEAS

5

IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA                    :

v.                                             :        CP-10-CR-0000512-2020

TYWANN RAHEEM WINDHAM,                          :
    Defendant.

For the Commonwealth:         Benjamin A. Simon, Esq., A.D.A.
For the Defendant:            Joseph L. Smith, Esq., A.P.D.        December __, 2020

## MEMORANDUM OPINION AND ORDER OF COURT

Before this Court for consideration is Defendant Tywann Raheem Windham's Omnibus Pretrial Motion. The motion was filed on August 31, 2020 and the hearing was held on October 27, 2020. At hearing, the parties did not present any testimony or argument. The Commonwealth did submit Commonwealth's Exhibit "1", the Application for Search Warrant and Affidavit of Probable Cause. The Court directed the parties to file briefs in support of their positions in 30 days. Defendant filed Memorandum of Law on November 17, 2020 and the Commonwealth filed Commonwealth's Response to Defense Omnibus Brief on November 24, 2020.

By Information filed on April 21, 2020, Defendant is charged with the following offenses:
- Count 1 – Manufacture, delivery, or possession with intent to manufacture or deliver heroin, 35 P.S. § 780-113(a)(30);
- Count 2 – Manufacture, delivery, or possession with intent to manufacture or deliver marijuana, 35 P.S. § 780-113(a)(30);
- Count 3 – Manufacture, delivery, or possession with intent to manufacture or deliver MDMA, 35 P.S. § 780-113(a)(30);
- Count 4 – Manufacture, delivery, or possession with intent to manufacture or deliver cocaine, 35 P.S. § 780-113(a)(30);
- Count 5 – Criminal conspiracy, 18 Pa.C.S.A. § 903(a)(1)/§ 780-113(a)(30);
- Count 6 – Possession of controlled substance, Alprazolam, 35 P.S. § 780-113(a)(16); and,
- Count 7 – Possession of drug paraphernalia, 35 P.S. § 780-113(a)(32).

Defendant avers that the affidavit of probable cause attached to the search warrant provides an insufficient basis for probable cause. Specifically, he questions the reliability of the confidential informant and the staleness of the information.

1

Pa.R.Crim.P. Rule 203(B), *Requirements for Issuance*, provides that, "No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority in person or using advanced communication technology. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits."

"The question of whether probable cause exists for the issuance of a search warrant [is] answered according to the 'totality of the circumstances' test articulated in *Commonwealth v. Gray*, 503 A.2d 921 (Pa.1985), and its Pennsylvania progeny, which incorporates the reasoning of the Unites States Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983). The task of the magistrate acting as the issuing authority is to make a practical, common sense assessment of whether, given all the circumstances set forth in the affidavit, a fair probability exists that contraband or evidence of a crime will be found in a particular place. A search warrant is defective if the issuing authority has not been supplied with the necessary information." *Commonwealth v. Huntington*, 924 A.2d 1252, 1255 (Pa.Super.2007).

Commonwealth's Exhibit "1" is the Application for Search Warrant, a six-page form dated March 4, 2020 and submitted at hearing. On pages 1 and 2, the affiant, Officer Ryan Doctor of the Butler City Police Department and a member of the Butler County Drug Task Force, requests to search "507 Virginia Avenue, Butler, PA 16001, a multi-story, single-family dwelling ... and the persons of Kari Summerville, Tywann Windham and any other persons present at the residence at the time of the execution of this warrant." Officer Ryan Doctor, identifies the items to be searched for and seized in Attachments "A" and "B". Attachment "A", page 3, is a detailed list related to cocaine in any form and any other illegal controlled substance, paraphernalia, books, records, financial proceeds, photographs, indicia of occupancy, telephone records, address books, and any firearms related to any illegal controlled substance. Attachment "B", page 4, is a detailed list of items related to heroin. The Affidavit of Probable Cause is found on pages 5 and 6 of the Application.

First, Defendant questions whether the affidavit contains enough information to establish the reliability of the confidential informant. The affidavit states the following: "In the later days of January 2020, I did interview a confidential informant that, for the purposes of this affidavit, will be referred to as CI 1. CI 1 told me about illegal drug sales occurring at 507 Virginia Avenue in Butler City. CI 1 identified the residence as belonging to Kari Summerville and Tywann Windham. CI 1 also advised that Windham sells large amounts of heroin out of the residence, and also advised that Kari Summerville sells crack cocaine out of the residence. I did verify through PennDOT records that Summerville and Windham have both listed 507 Virginia Avenue as the address on their respective driver's licenses. The Butler County Drug Task Force and Butler City Police are familiar with both Windham and Summerville from prior drug investigations. I also checked the criminal histories for both and found that Summerville has one felony drug conviction and Windham has two felony drug convictions. At a later date, CI 1 was shown JNET photographs of both Windham and Summerville and positively identified both." *Commonwealth's Exhibit "1" (Search Warrant Application, Affidavit of Probable Cause), pg. 5.*

The affidavit continues: "In the early days of February 2020, a controlled purchase of heroin was made from Tywann Windham at 507 Virginia Avenue utilizing CI 1. CI 1 and CI 1's vehicle were both searched prior to and immediately following the buy and found to be free of controlled substances, money, weapons, or other contraband. At my direction, CI 1 contacted Windham at (724) 332-1784 and requested to come to the aforementioned residence to purchase heroin. Windham agreed. CI 1 was provided with pre-recorded official funds. CI 1 was followed by law enforcement to the area of Windham's residence and was observed entering 507 Virginia Avenue via the front door. CI 1 was

2.

observed exiting the same door minutes later and was followed back to an undisclosed location by law enforcement. At that undisclosed location, CI 1 did turn over suspected heroin to law enforcement. CI 1 stated that they purchased the suspected heroin from Windham for the pre-recorded funds. The suspected heroin was not field tested for officer safety and was sent to the Pennsylvania State Police lab for further analysis. CI 1 advised that, during the course of the controlled buy, they did witness a handgun near Windham. On 02/25/2020, Windham contacted Butler City Police to report his child missing from his residence at 507 Virginia Avenue." *Id.*

In *Commonwealth v. Clark*, 611 Pa. 601, 28 A.3d 1284, 1288 (2011), quoting *Gates*, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing] that probable cause existed.'" The *Clark* Court continues: "This Court subsequently held that a determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner. *Commonwealth v. Luv*, 557 Pa. 570, 735 A.2d 87, 90 (1999). Thus, an informant's tip may constitute probable cause where police independently corroborate the tip, **or** where the informant has provided accurate information of criminal activity in the past, **or** where the informant himself participated in the criminal activity. *Id.*

The Court agrees with the Commonwealth that CI 1's reliability and basis of knowledge for the purpose of securing a search warrant was established by the police independently corroborating the tip. CI 1 identified 507 Virginia Avenue as the residence of Kari Summerville and Tywann Windham. Officer Doctor verified through Penn DOT that Summerville and Windham list 507 Virginia Avenue as their address on their drivers' licenses. Additionally, on February 25, 2020, Windham contacted the Butler City Police to report his child missing from his residence at 507 Virginia Avenue. CI 1 told Officer Doctor that Windham sells large amounts of heroin from the residence and that Summerville sells crack cocaine from the residence. The Butler City Police and the Butler County Drug Task Force know Summerville and Windham from prior drug investigations. In addition, both have felony drug convictions. Lastly, according to the Affidavit of Probable Cause, pages 5-6, the police conducted a "trash pull"[1] at 507 Virginia Avenue on March 3, 2020. The contents included mail addressed to Summerville, six (6) clear plastic bags, one of which the corner was torn off, and eight (8) small green Ziploc bags, three (3) of which contained suspected crack cocaine.

Defendant also claims that the information provided in the affidavit is stale. The Court disagrees. According to the affidavit, Officer Doctor spoke with CI 1 in the later days of January 2020 and that in the early days of February 2020, CI 1 participated in a controlled purchase of heroin from Defendant at his 507 Virginia Avenue residence. On February 25, 2020, Defendant called the police to report that his child was missing from his 507 Virginia Avenue residence. The trash pull was conducted on March 3, 2020 and the search warrant was applied for and executed on March 4, 2020. As pointed out by the Commonwealth's Response to Defense Omnibus Brief, the "trash pull confirmed that packaging materials and controlled substances were still in that location 24 hours prior to the execution of the warrant."

---

[1] "A trash pull is a law enforcement investigative technique, where officers seize household trash that is left at the street/curbside during routine trash collection. The trash is seized and taken to the police department, where the trash is searched for evidence." *Commonwealth v. Bee*, 120 EDA 2018 (Pa.Super.2018) (non-precedential decision).

In *Commonwealth v. Murphy*, 916 A.2d 679, 682 (Pa.Super.2007), the Court explains, "In this jurisdiction, in determining whether probable cause for issuance of a warrant is present, the 'totality of the circumstances' test set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), was adopted in *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985). Under such a standard, the task of the issuing authority is to make a practical, common sense assessment whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Commonwealth v. Melilli*, 521 Pa. 405, 419-21, 555 A.2d 1254, 1262 (1989). A search warrant is defective if the issuing authority is not supplied with a time frame within which to ascertain when the affiant obtained the information from the informant and when the informant witnessed the criminal acts detailed in the affidavit of probable cause. *Commonwealth v. Haggerty*, 388 Pa.Super. 67, 564 A.2d 1269, 1271 (1989). Our Supreme Court, in *Commonwealth v. Baker*, 513 Pa. 23, 518 A. 2d 802 (1986), stated: An issuing authority presented with the sworn testimony of an affiant may, absent obvious chronological inconsistencies, rely that the affiant is speaking of the present or the immediate past. 'Staleness' when raised must not be determined by rigorous exactitude, ...."

In conclusion, the Court finds that based upon the totality of the circumstances test, the Affidavit of Probable Cause is legal and adequate for the approval of the search warrant in this case. Therefore, Defendant's Omnibus Pretrial Motion is denied. Accordingly, the Court issues the following:

IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA          :

          v.                          :          CP-10-CR-0000512-2020

TYWANN RAHEEM WINDHAM,                 :
          Defendant.

## ORDER OF COURT

AND NOW, this _11_ day of December 2020, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Omnibus Pretrial Motion is DENIED.

This case shall be scheduled as follows:

Status on the          13th day of _January_ 2021 at _9:30_ o'clock _A_.m. in Courtroom 4.

BY THE COURT:

TIMOTHY F. McCUNE, JUDGE

12.16.20
MCC
IEC
DA ( )/AG
Def/Atty _Smith_
File ( )
Other _____